Danes *et al. v.* Pearson.

---

No. 653.

## DANES ET AL. *v.* PEARSON.

JURY.—*Communication to by Judge in Jury-Room.—Reversible Error.—Rule as to Communications to.—Misconduct of Judge.—Waiver.*—The judge of a court occupies a different attitude toward the jury from that of any other person, and, owing to his superior influence, he should make no communication to the jury except in open court, in the presence of the parties or their counsel, or after full opportunity has been given them to be present, unless the parties have expressly waived all objection thereto.

NEW TRIAL.—*Misconduct of Officer of Court.—Objections to.—How Taken.—Waiver.—Practice.*—It is not required of a party or his attorney to make objection at the time to the misconduct of an officer of the court, when

the acts were not done in open court, but the proper practice is to bring such irregularities to the attention of the court in a motion for a new trial.

From the Sullivan Circuit Court.

*J. S. Bays, W. A. Cullop* and *C. B. Kessinger*, for appellants.

*J. T. Hays*, for appellee.

LOTZ, J.—The appellee brought this action against the appellants to recover the possession of seven hundred and fifty shocks of wheat. He obtained a judgment in the court below, and from that judgment an appeal was taken to this court. Two errors are assigned here, viz.: (1), the overruling of a motion for a *venire de novo*, and (2) the motion for a new trial.

Appellants' counsel have considered the last one only, and, under the familiar rule, the first is waived.

One of the causes assigned for a new trial is the alleged misconduct of the judge who presided at the trial. It is shown by the affidavit of one of the attorneys for appellants, who assisted on the trial, that after the evidence and argument had been closed, and after the jury had been instructed by the court, and had retired to the jury room to deliberate on the verdict, and that while so confined in said room, and before a verdict had been found, the judge of said court, who presided on the trial of said cause, went with the bailiff in charge of said jury to the door of the jury room; that the bailiff then unlatched the door of said room and opened it; that the said judge then entered said room, and that the bailiff then closed said door and latched the same while the judge remained on the inside of said room with the jury; that said judge entered said room without the consent of affiant, and without notifying him that he was going into said room, and that affiant had no knowledge that said judge intended to enter said room until after he had done so, and the bailiff had

closed and locked the door thereto with said judge therein; that the only persons present at the time were said judge and two bailiffs and a member of the bar of an adjoining county and the affiant.

There were no counter affidavits filed, but the bill of exceptions contains the following recital:

"That after the jury had received their instructions in said cause, and had retired to consider of their verdict, and before they had agreed upon their verdict in said cause, and while they were locked up in their room deliberating on their verdict, and after they had been deliberating for a period of about one and one-half hours, and between the hours of 5 and 6 o'clock in the evening of the 5th day of November, 1891, and while the jury were in their jury-room deliberating upon their verdict in said cause, and before they had agreed upon a verdict, and before they had been discharged therefrom, and after said cause had been submitted to them for their determination, and before they had arrived at a verdict in said cause, the Honorable John C. Briggs, the judge of said court, and presiding judge in said cause, went from the judge's desk in the court room to the door entering the petit jury room, in which said jury were so deliberating of their verdict, requested the bailiff to open the said door, and the door being opened said judge stepped into said room and said to said jury: 'Gentlemen, is there any prospect of your agreeing upon a verdict soon?' Whereupon one of the jurymen referred the judge to the foreman, who came forward and said: 'We can hardly tell, as there is some disagreement among us. Can you tell us anything about the instructions?' To which the judge answered: 'No, I can not say anything to you about the case. If you conclude you want to hear the instructions read again, you can let me know through your bailiff, and I will re-read them to you in open court, in the presence of the counsel in the case.' The judge then said to the jury: 'I came in to see if there was any

prospect of you agreeing before supper, and if not, I desire to direct the sheriff to arrange for your supper, and as I was about leaving the court house I will tell the bailiff to order supper for the jury.' And this was all that took place between said judge and jury, and all that occurred therein while said jury was in said jury room in any manner relating to said cause; .that, when said judge stepped into said jury room, said bailiff remained outside of the door, and closed the same, but whether he fastened the same or not, by locking it, the said judge did not notice, for as he was concluding the last sentence above set out, he placed his hand on the thumb latch of the door, and it was at once opened, and as the latch rattles freely and loosely, it may have been fastened by the bailiff; that his attention was not attracted to the matter at the time, nor until a motion for a new trial was filed some days after; that, as the judge walked from the judge's desk to the petit jury room, John S. Bays, one of the attorneys for defendants, and who helped in the trial thereof, was standing near the judge's stand talking to Col. Aden G. Cavins, an attorney of the Greene Circuit Court, and facing the judge as he walked across the court room and went into the jury room aforesaid, and saw said judge enter said jury room, but when the judge came out of said jury-room said Bays had left the court room; that said judge was in said jury room just long enough for said conversation to occur, with the necessary and natural delay between the sentences, and may have been there from two to four minutes; that no objection was made by said defendant's attorneys until a motion for a new trial was filed by defendants, when it was made one of the grounds for a new trial, as shown by the motion; that the sole and only object of said judge, in going into said jury room, was to know if said jury would probably agree before supper was ordered for them at the expense of the county; that no other person or parties were present at the time said judge

Danes *et al. v.* Pearson.

was in said jury room with said jury; that said judge did not notify defendants or their counsel that he was going into said room where said jury was confined deliberating on said cause, and said judge did not ask their consent, or that of their counsel, and that they did not know said judge intended to enter said room, or see him, except John S. Bays, as herein stated."

The question here presented for our determination is whether or not such conduct on the part of the presiding judge is error, and, if error, is it such as entitles the appellants to a reversal of the cause? The high character of the Circuit Judge, who presided at the trial, is a sufficient guaranty that none but the best of motives actuated him in making the communication to the jury; nor is there anything in the communication itself that had any tendency to prejudice or injure the rights of the appellants. Unless, therefore, a positive rule of law has been violated, a breach which public policy will not excuse, the cause must be affirmed. In the selection of a jury it is the policy of our law that none but persons who are entirely disinterested and free from all bias and prejudice shall be chosen. After the jury shall have been empanelled, the greatest circumspection is provided, that no undue influence be brought to bear upon the minds of the jurors (section 540, R. S. 1881), and after the cause shall be finally submitted, and the jury retire for deliberation on the verdict, the law redoubles its vigilance that no improper communication be made.

Section 539, R. S. 1881, provides that "whenever a case is finally submitted to the jury, they may decide in court, or retire for deliberation. If they retire, they must be kept together in some convenient place, under the charge of a sworn officer, until they agree upon a verdict or are discharged by the court, subject to the discretion of the court to permit them to separate temporarily and at their meals. The officer having them under his charge shall not suffer any

communication to be made to them, or make any himself; except to ask them if they have agreed upon their verdict, unless by order of the court; and he shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed upon."

If there be a disagreement, or the jury desire further instruction, the officer may conduct them into court, where the information shall be given in the presence of, or after notice to, the parties or their attorneys. Section 541, R. S. 1881.

These statutes are but a reiteration of the common law.

Trial by jury is one of the most important instrumentalities in the administration of justice, and for many centuries it has been the constant endeavor of the law to put twelve honest and disinterested men in the jury box. After the jury has been empanelled, the vigilance is augmented that no improper influence or communication be permitted to reach them, and especially is this so after the jury has retired for deliberation on the verdict. There is not much harmony in the decided cases as to what will constitute a harmful communication when made by a third person, or by the bailiff or clerk, but in all instances such communications are scrutinized with the greatest care. When an important communication has been made the presumption is that it is hurtful, and it is then incumbent on the opposite party to show that no harm resulted. But a judge of the court occupies a different attitude toward the jury from that of any other person. In the heat and passion often engendered on the trial, and in the conflicting arguments and statement of law by opposing counsel, the jury naturally look to the court to bring certainty out of the confusion. An act, a sentence, or a word from the presiding judge may exert a controlling influence on the verdict. It is for these reasons that a communication by the judge to the jury stands on a different basis from that of another

person, and for a like reason the law should throw a higher degree of circumspection around such communications. It is also true that the presiding judge is charged with the duty of securing a fair and impartial trial to all parties litigant, and the presumption is that he will do his whole duty, and, in any communication that he may make to the jury, either in open court or privately, he will have a due regard for the rights of all concerned. Still we think that, owing to his superior influence, he should make no communication to the jury, except in open court, in the presence of the parties or their counsel, or after a full opportunity has been given them to be present. These requirements may be waived by the parties, but unless there is an express waiver, the judge should not make any communication whatever.

We do not overlook the fact that section 539, *supra,* authorizes the officer having the jury in charge, to make communications to them by the order of the court. It is apparent that such communications must relate to merely formal matters. Nor does it follow that because the court may authorize the officer to make such communications, the judge may make them himself. No relationship, such as principal and agent, exists between the judge and the bailiff. The officer is the one, and the only one, who has authority to communicate with them, and this excludes the judge. He alone the law designates and brings in close relation to the jury. If the judge desires to make a formal communication to the jury, the law has pointed out the way, and the person through whom it may be done. Surely the judge is not at liberty to do that which the law forbids all persons from doing. The judge, charged with so many grave responsibilities in the trial of a cause, should be the last to infringe on the rules prescribed by statute.

In an early American case (1823), a new trial was granted because the judge, after the court was adjourned, wrote a

letter to the jury concerning the cause, which had been committed to them. Chief Justice Parker, who delivered the opinion, said:

" As it is impossible, we think, to complain of the substance of the communication, the only question is, whether any communication at all is proper, and if it was not, the party against whom the verdict was, is entitled to a new trial, and we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in the presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course; ' he is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed, and he is not to suffer them to separate until they are agreed, unless by order of the court. When the court is adjourned, the judge carries no power with him to his lodgings, and has no more authority over the jury than any other person; and any direction to them from him, either verbal or in writing, is improper.' It is not sufficient to say that this power is in hands highly responsible for the proper exercise of it; the only sure way to prevent all jealousies and suspicions is to consider the judge as having no control whatever over the case, except in open court, in presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice, and the convenience of jurors is of small consideration compared with this great object. It is better that everybody should suffer inconvenience, than that a practice should be continued which is capable of abuse, or at least of being the ground of uneasiness and jealousy." *Sargent* v. *Roberts*, 1 Pick. 337.

In a more recent case, where the judge gave an instruction to the jury in the jury room, in the absence of the parties, the same court said :

" For such misconduct a new trial will be granted without inquiring whether the instruction was prejudicial or not, and even though the instruction be admitted to be correct." *Read* v. *City of Cambridge,* 124 Mass. 567.

In *Hoberg* v. *State,* 3 Minn. 181, the judge, in the absence of the parties, merely informed the jury in retirement, that if they desired any further information upon matters of law, they could come into court and ask for it. This was held to be such an irregularity as entitled the party against whom the verdict was rendered to a new trial. The court said :

" A judge has no more right to communicate with a jury, after it has retired, than any other person." * * * " The judge can have no communication or give them the least information, except in open court, in the presence of, or after due notice to, the parties."

In *Crabtree* v. *Hagenbaugh,* 23 Ill. 289, after the jury had retired to consider their verdict, they sent for the judge, who repaired to their room, and there, in the absence of the parties, had a conversation with them concerning the instructions which had been given them. The court in that case said, in substance : we assume that it (the conversation) had no influence upon them, but we think the judgment should be reversed for the simple reason that the interview did take place. If, in this case, no harm was actually done, and for that reason the verdict is allowed to stand, we open the door to the inquiry in all such cases as to whether the party has been injured by the interview. Such an inquiry should not be tolerated. The policy of the law required that all the proceedings of the court should be open, notorious, and in the presence of the parties, so that if he is not satisfied with it, he may take his exceptions to it in the mode pointed out by the law, and

not be put to extraneous proof to show that an error has been committed in a secret proceeding, and, in fact, out of court.

See, also, *Fisher* v. *People, etc.,* 23 Ill. 218 :

" The history of the law discloses a struggle for centuries, to prevent juries from being approached by improper communications." *O'Brien* v. *Merchants' Fire Ins. Co.,* 38 N. Y. Sup. Ct. Rep. 482.

It is equally essential that the deliberations of the jury shall be conducted in privacy and secrecy, as that all communications between the judge and the jury should be in public. " Repeated infractions of this salutary rule, in exceptional instances, varied in accordance with the exigencies of each particular case, would gradually fritter away, and ultimately effect its complete abrogation. It should be permanent and immutable. If trial by jury is to 're-main inviolate forever,' every safeguard to its secrecy must be jealously upheld." *Plunkett* v. *Appleton,* 51 How. Pr. Rep. 469.

So strict has been the holdings in some cases that it has been held error even for the judge to pass through the jury room and suffer them to put questions to him, although he made no answer. *Benson* v. *Clark,* 1 Cow. 258; *Kirk* v. *State,* 14 Ohio, 511.

In *Wiggins* v. *Downer,* 67 How. Pr. Rep. 65, it is said that " The principle upon which the rule rests is that such communications are so dangerous and impolitic that they will be conclusively presumed to have influenced the jury improperly." *Watertown Bank, etc.,* v. *Mix,* 51 N. Y. 558.

There are many cases which hold that a communication between the jury and the officer having them in charge, or the clerk of the court, or third parties, will not be cause for a new trial, when it is made to appear that no harm resulted. We think the distinction between such communications and one by the presiding judge should be distinctly marked and maintained. We are aware that there is

high authority which lays down a different rule. *People* v. *Kelly*, 94 N. Y. 526; *Allen, etc., Co.* v. *Aldrich*, 29 N. H. 63; *Goldsmith* v. *Soloman*, 2 Strobhart (S. C.), 296.

We think, however, that, under the facts of this case, to hold that the presiding judge may, without the knowledge or consent of the parties, at his pleasure and unbidden, obtrude upon the seclusion and secrecy of the jury room, would be to lay down a rule fraught with danger.

The highest considerations of public policy require that the jury, in deliberating upon their verdict, should be untrammeled by extraneous influences, and this can only be secured by a rigid adherence to the safeguards thrown around them. The rules designed to secure a fair and impartial trial ought not to be further relaxed.

Counsel for appellee contend that as one of appellant's attorneys was present when the judge entered the jury room, and that as he made no objection until the motion for a new trial was filed, there was an acquiescence in the conduct of the judge, and the appellants are estopped to urge such conduct as a cause for a new trial. It is true that where counsel see improper conduct on the part of any officer of the court, and make no objection, it can not be made a cause for setting aside the verdict. *Waterman* v. *State*, 116 Ind. 51.

One of the purposes of an objection, on the trial of a cause, is to advise the court of the irregularity of the proceeding, and afford an opportunity to correct any error committed. But in the case at bar, if there was an error committed, it was such an one as could not have been corrected. Exceptions to proceedings must be taken at the time, but this rule applies only to proceedings done in open court, not to proceedings out of court. After the return of the verdict, the natural order of procedure is to make a motion for a new trial, and that is the proper time to bring such irregularities to the attention of the court.

Nor do we think the action of appellants' counsel can be so construed as consenting to the judge entering the room.

In *Taylor* v. *Betsford*, 13 Johns. 486, the justice went into the jury room with the jury, at their request, to answer certain questions propounded to him, but had not obtained the consent of the plaintiff in error, who, however, knew that the justice was going, and did not object to it. The court said:

"Whether the information given by the justice were material, or had any influence on the verdict of the jury, is a matter which we will not inquire into. In the present case, it can not fairly be inferred that the plaintiff in error gave his consent, unless from the circumstances that he knew that the justice was going in to the jury, and did not object. But this is not enough. The practice is dangerous and improper, and ought to be guarded against; and the consent ought not to be matter of inference, as it may be liable to great abuse: it ought to appear affirmatively that it was done with the consent of parties."

We are of the opinion that the entry into the jury room by the judge, as shown in the bill of exceptions in this case, is reversible error. We think the rules and policy of the law forbid us to inquire into the fact whether or not harm resulted. Other questions are discussed by counsel, but, as they may not arise on another trial, we deem it unnecessary to consider them.

Judgment reversed, with instructions to grant a new trial.

Filed April 11, 1893.