SMITH v. HARRIS et al. (No. 6950.)

(Court of Civil Appeals of Texas. San Antonio. May 16, 1923. Rehearing Denied June 6, 1923.)

1. Trial ⬉313—Private communication of judge with jury during deliberation necessitates setting verdict aside.

Though the action of the trial judge, in holding communication with the jury during their deliberations, and in the absence of the parties and their counsel, was without any intent or purpose to influence the jury, and though no injury nor prejudice may have resulted therefrom, the verdict of the jury must be set aside; the action of the judge being violative of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1959–1962.

2. New trial ⬉157—No hearing is required where ground of motion is communication between judge and jury in absence of parties and counsel.

Rev. St. art. 2021, providing that, where the ground of a motion for new trial is miscon-

duct or because of any communications made to jury, the court shall hear evidence thereof, and may, in its discretion, grant a new trial therefor, held not applicable, where it was affirmatively shown without dispute that the trial judge held communication with the jury during their deliberations, in the absence of the parties and their counsel.

3. Mines and minerals ⬉78(1)—Oil and gas lease as to drilling and payment of rent on default construed most favorably to owner of land.

Oil and gas lease for a definite term of years, providing that the lessee shall commence drilling operations within specified time, or in default therein shall pay a designated annual rental, is substantially no more than a contract giving the lessee an option to enter upon the property and begin drilling within a certain stipulated period, which option may be renewed from time to time by the payment of the stipulated rent, which, when not paid, results in the right no longer existing, and such contracts are to be construed most favorably in the interest of the owner of the land.

4. Mines and minerals ⬉78(2)—Failure of lessee to begin well or pay rent terminates lease.

Failure of the lessee to begin a well and his failure to pay the rents stipulated, in default of his agreement to begin the well, terminates all the rights of the lessee to continue under the contract, and nothing but the act or favor of his landlord will give him any further right to enter the premises and explore for gas or oil.

5. Mines and minerals ⬉78(5)—Forfeiture of lease for default in drilling well or payment of rent avoided only by equitable waiver or estoppel.

Stipulations in oil and gas leases for the drilling of wells and payment of rentals to continue in effect the lessee's option, are merely conditions for the continuation or termination of the lease term, and not covenants by the lessee, and only some such equitable defense as waiver or estoppel will prevent the enforcement of the consequences of a nonfulfillment of a condition of forfeiture in the lease.

6. Mines and minerals ⬉74—Purchaser's liability for breach of contract and for damages for permitting forfeiture of lease not relieved by estoppel, based on lessee's acts after forfeiture.

In an action by the owners of an oil and gas lease for damages for the breach of contract by the persons to whom they sold such lease, by reason of defendants permitting forfeiture by neither drilling a well nor paying the annual rental stipulated by the lease, the lease having terminated upon defendant's failure to pay the agreed rental, any subsequent act of the plaintiffs in attempting to assign the lease to others could not constitute an estoppel, for it could not in any way have injured defendants, nor could it change or alter the fact that plaintiff's only remedy was for the agreed price for the sale of the lease and damages resulting from the breach.

**7. Election of remedies ⊚═1—Choice of remedies essential to election.**

There can be no election of remedies, unless more than one remedy exists.

**8. Appeal and error ⊚═882(14)—Error in submitting issue not available, where submission requested by appellant.**

Appellant cannot be heard to complain of the form in which a special issue requested by him was submitted, or that there was no evidence to warrant its submission.

**9. Mines and minerals ⊚═74—Purchaser of lease suffering forfeiture for his breach of condition to pay rent liable to owner of lease for them.**

Where the owner of an oil and gas lease sold and assigned the same to defendants under a contract requiring them to keep the lease in force by drilling a well, or in default thereof paying the stipulated annual rentals, and the purchasers, without the knowledge of the owner defaulted, and caused the lease to be forfeited for nonpayment of rents, the purchasers are liable in damages to the owner of the lease for its value.

**10. Appeal and error ⊚═882(17)—Appellant cannot complain of finding on special issue requested by him.**

Appellant cannot complain of the finding of the jury in answer to a special issue submitted by him.

**11. Appeal and error ⊚═1051(1)—Erroneous admission of testimony not affecting result harmless.**

In an action by the owner of an oil and gas lease against the purchaser of such lease, for damages, by reason of defendants suffering the forfeiture of the lease for nonpayment of rents, testimony as to the statements of the landowner to the effect that he had forfeited the lease for nonpayment of rents, even if erroneous, could not have prejudiced defendants, where the forfeiture by such landowner was conclusively proven.

**12. Mines and minerals ⊚═74—Payment held due on approval of abstract.**

Where a contract for the purchase of an oil and gas lease contains a provision for the payment of a definite sum of money upon the examination and approval of the title, that sum of money becomes due and payable upon the date such approval is made.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by R. K. Harris and others against T. R. H. Smith. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

H. L. Stuart, of Oklahoma City, Okl., for appellant.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellees.

COBBS, J. This suit was brought by appellees to recover damages in the sum of $30,000 and interest; $3,000 alleged to be owing appellees under a written contract for assignment of four-eighths interest in oil and gas lease on 42 acres of land in Stephen county, Tex., and $27,000 alleged to be due and owing appellees by appellant on account of failure to pay rental on said oil and gas lease, causing a forfeiture thereof. Appellee agrees to the appellant's statement of the nature and result of the case, and the issues made by the pleadings. While it is not very concise, brief, or clear, we nevertheless adopt it as follows:

"Appellees alleged as grounds of recovery against appellant, on June 5, 1919, and prior thereto, ownership of an oil and gas lease executed by T. A. Ince and wife, as lessors, to S. B. Felt, as lessee, on 42 acres of land, dated January 10, 1914, recorded in volume 54, p. 3, Deed Records of Stephens County, Texas, said lease by its terms providing for continuance for ten years from and after its date, subject to forfeiture should lessee not begin drilling of a well on said land within one year from date thereof, or should not pay to lessor sum of $40 on or before beginning of each 12 months' period until a well shall have been commenced thereon, said lease further providing for payment of a one-eighth royalty to said lessors, and containing other provisions customarily inserted in oil and gas leases; execution on June 5, 1919 of written contract by appellees with appellant, assigning to appellant an undivided four-eighths interest in said lease, said contract providing that appellees were retaining an undivided three-eighths interest in said lease, appellant agreeing, as part of consideration, within 120 days from June 5, 1919, to begin operations for drilling of oil well on said land and to prosecute said operations with reasonable diligence to completion at appellant's expense, and, as a further consideration, appellant agreeing to pay appellees the sum of $3,000 upon examination and approval by appellant's attorney of title to said land and lease, it being the intention and contemplation of all parties to said contract, though not actually expressed therein, that said title should be examined by appellant or his attorneys within a reasonable time after abstract of title had been placed in appellant's possession; the delivery to appellant on June 5, 1919, or within a few days thereafter a full and complete abstract of title to said land, the agreement by appellant to furnish opinion of his attorneys on said title within a reasonable time, the receipt by appellees from appellant of an opinion from attorneys of appellant on or about September 16, 1919, pointing out certain objections to title, the procuring of various instruments to correct defects in title pointed out by appellant's attorneys, and resubmission of said abstract with said additional documents to appellant on or about September 22, 1919, failure of appellees to procure any report from appellant whether or not title had been or would be approved by his attorneys until about July 5, 1920, at which time said attorneys approved the title and wrote an opinion, a copy of which opinion was delivered to appellant and appellees; extension by appellees of time to begin

operations by appellant at appellant's request, until December 5, 1919, the extension by appellees of time to begin drilling from time to time and from month to month at appellant's request, appellant agreeing as a part of the consideration for such extension, that if a well should not be started before the time the next rentals on said lease should be paid, appellant would pay the same on or before the date the said rentals became due, and thereby prevent a forfeiture of said lease, and an agreement made by appellant in the month of March, 1920, as a part of the consideration for extension of time to pay all rentals on said lease which would become due on September 1, 1920, reliance by appellees upon said promise and the nonpayment of the rentals by appellees when the rentals became due on September 1, 1920; failure and refusal of appellant to pay the $3,-000 due and payable on approval of title to said lease, and the installment of rental due on said lease on September 1, 1920, resulting in the forfeiture and termination of said lease and all rights thereunder, and the notification on October 27, 1920, by the lessors in said lease to appellees that said lease had been forfeited; the ownership by appellees on September 1, 1920, and on October 27, 1920, of said three-eighths interest worth $27,000, and the loss of said $27,000 by reason of failure of appellant to pay said $3,000, and said rental; appellees' pleading in alternative in paragraph 9 of said second amended petition that in event of mistake in their rights of recovery of the $3,000 and the $27,000, as theretofore pleaded in said second amended petition, for the recovery of $30,000 damages on account of violation by appellant of agreement at time of execution of written contract on June 5, 1919, said contract should not be recorded in Stephens county until title to said property had been examined and the $3,000 paid appellees, appellant being alleged to have caused recording of said contract on September 10, 1919, in volume 70, p. 380, Deed Records of Stephens County, Texas."

The defense was:

"First, a general denial; second, the waiver by appellees of right to recover the $3,000 under contract of June 5, 1919, on account of the execution and delivery on or about 8th day of December, 1920, to L. J. Derrick and F. C. Randlett by plaintiff and appellee R. K. Harris, trustee, acting for himself and all other plaintiffs and appellees with due authority, of an assignment of oil and gas lease described in contract of June 5, 1919, said assignment filed for record on December 8, 1920, and recorded in volume 9, p, 582, Deed Records of Stephens County, Texas, and in which said assignment said R. K. Harris, trustee, agreed to warrant and forever defend title to said leasehold interest conveyed to said Derrick and Randlett, said assignment showing that said Derrick and Randlett agreed to pay to T. A. Ince, one of the original lessors, the one-eighth royalty called for in the said original lease, and also to deliver to said R. K. Harris, trustee, or to his credit in the pipe line to which wells drilled on said 42 acres might be connected, free and clear of all cost or expenses, an equal one-sixteenth of all oil and gas saved from said 42 acres, and by the execution and delivery by said plaintiff and appellee R. K. Harris,

trustee, acting for himself and other plaintiffs and appellees with due authority, to T. A. Ince, on August 25, 1921, of a release of said oil and gas lease executed by T. A. Ince and wife to S. D. Felt, said release being recorded in volume 103, p. 516, Records of Stephens County, Texas; third, denial of forfeiture of oil and gas lease, and allegation of lack of right of T. A. Ince and wife to forfeit lease after said Ince and wife notified or attempted to notify said Felt that said lease had been forfeited, the amounts of money provided for in said lease to keep the same alive until September 1, 1922, had been used and accepted by said T. A. Ince, said T. A. Ince having paid at time of institution of suit all amounts of money necessary to keep said lease alive up to and including September 1, 1921, and since institution of this suit, the said T. A. Ince having accepted and used money sufficient to keep lease alive up to and including September 1, 1922; fourth, also estoppel of appellees to recover the $27,000, or any part thereof on account of the execution of said assignment from R. K. Harris, trustee, to Derrick and Randlett, and said release to T. A. Ince; fifth, destruction of rights of appellant on account of execution of said assignment and said release, and estoppel of appellees from recovering anything herein; sixth, the waiver of objection by appellees to recording of contract mentioned in ninth paragraph of second amended petition, and no damage to appellees having occurred on account of said contract having been placed of record, the nonclaim by appellant long prior to institution of this suit, of any rights under said contract of June 5, 1919, and the disclaimer by appellant of any rights under said contract of June 5, 1919."

An examination of the lease dated the 1st day of September, 1916, by T. A. Ince and Bessie Ince to S. D. Felt, does not contain any express authority for transferring, assigning, or subleasing. But no question is raised on that point, and it is not before us for decision.

The case was tried before the court with a jury on special issues, and upon the return of their verdict the court rendered a judgment in favor of appellee against appellant for $13,910, with interest at the rate of 6 per cent. per annum.

The first proposition presented is the twenty-first ground in the motion for a new trial claiming:

"The error of the court and the jury in communicating and conversing with each other in and concerning this case during the afternoon of February 10, 1922, in the jury room and not in the courtroom and not in open court and in the hearing of counsel for both sides, as shown by the affidavits of T. R. H. Smith and A. L. Bergere and Frank W. Parker herewith filed and made part of this motion."

This claimed error was preserved by proper bill of exception. On motion for rehearing, covering the action of the court, a number of written affidavits were introduced from bystanders, who stated substantially and in effect:

"During part of the trial which commenced on February 7, 1922, and in which the jury retired to deliberate on their verdict on Friday, February 10, 1922, that he was present in the courtroom about 5 o'clock p. m. on February 10, 1922, when the district judge excused the jury and attorneys in another case until Saturday morning, February 11, 1922, that the jury in this case were at that time deliberating on a verdict in the jury room, that the district judge walked to the jury room where the jury was deliberating, opened the door, and after opening the door the judge received from one of the jurors a paper and looked over the same and handed the same back to the juror. After the judge had talked to said juror or jurors for a short while, the jurors left the jury room and went out of the courtroom, and the judge went back toward the bench. He did not hear what was said by the judge or any of the jurors while the judge was talking to the jurors; that he could see what was done but could not hear what either the judge or any of the jurors said; that he was sitting on one side of the courtroom, and the distance between where he was sitting and the jury room was nearly the entire width of the courtroom."

No other witness or oral testimony was introduced nor any member of the jury questioned, and no explanation made by the judge or by any one else, and we are left entirely as to conjecture, and presumption, and appellee stands on the case made by appellant.

As appellant has so well presented the question and the authorities to support his position, we take the liberty of copying from his brief:

"Articles 1959, 1960, 1961, and 1962, Vernon's Sayles' Texas Civil Statutes; Texas Midland Ry. Co. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137; notation made by the Supreme Court of Texas, on its writ of error docket granting writ of error in Wichita Falls Compress Co. v. Moody (Tex. Civ. App.) 154 S. W. 1032, said notation reading:

" 'Granted—Because of communication between court and jury in violation of statute. We are also inclined to think it was error for the trial court to instruct the jury peremptorily to find for the railway company against the compress company in the event it should find for the plaintiff against the railway company.'

"Danes v. Pearson, 6 Ind. App. 465, 33 N. E. 976–977.

"The notation made by the honorable Supreme Court of Texas in granting writ of error in Wichita Falls Compress Co. v. Moody is taken from letter dated February 20, 1922, of Fred T. Connerly, clerk of the Supreme Court of Texas, to the writer of this brief. The understanding of the writer of this brief is that a settlement was affected in said case of Wichita Falls Compress Co. v. Moody before a decision by the Supreme Court of Texas.

"In Texas Midland Railway Co. v. Byrd, supra, at pages 1164 and 1165 of 115 S. W. (20 L. R. A. [N. S.] 429, 20 Ann. Cas. 137), of 102 Tex., at page 266 the Supreme Court of Texas, says:

" 'In numerous cases from other jurisdictions it is held that the private conversation of the judge and the jury is not only improper, but that it is misconduct for which the judgment will be reversed, without reference to the question whether such misconduct affected the verdict. Sargeant v. Roberts, 1 Pick. (Mass.) 337, 11 Am. Dec. 185; Read v. Cambridge, 124 Mass. 567, 26 Am. Rep. 690; Watertown Bank & Loan Co. v. Mix, 51 N. Y. 558; Fish v. Smith, 12 Ind. 563; Crabtree v. Hagenbaugh, 23 Ill. 349, 76 Am. Dec. 694; Moody v. Pomeroy, 4 Denio (N. Y.) 115; Kirk v. State, 14 Ohio, 511; Bunn v. Croul, 10 Johns. (N. Y.) 239; State v. Smith, 6 R. I. 33. In speaking for the court in the case first cited above Chief Justice Parker says: "The communication in question in this case was made upon the ground of this practice, which had been so common here as to pass without notice. The object of the note of the foreman was probably to obtain leave for the jury to separate, and the answer of the judge was calculated to enable them to revise the case in a systematic manner, in the hope that such a revision would produce a union of opinion on one side or the other of the cause. It probably had that effect. As it is impossible, we think, to complain of the substance of the communication, the only question is whether any communication at all is proper; and, if it was not, the party against whom the verdict was is entitled to a new trial. And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course: 'He is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed'; and he is not to suffer them to separate until they are agreed, unless by order of court. When the court is adjourned, the judge carries no power with him to his lodgings, and has no more authority over the jury than any other person; and any direction to them from him, either verbal or in writing, is improper. It is not sufficient to say that this power is in hands highly responsible for the proper exercise of it. The only sure way to prevent all jealousies and suspicions is to consider the judge as having no control whatever over the case, except in open court, in presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice, and the convenience of jurors is of small consideration compared with this great object. If, by reason of the long intervals between the sessions of the court, jurors here are subjected to inconvenience which do not exist elsewhere, this must be remedied by holding two sessions a day instead of one. It is better that everybody should suffer inconvenience than that a practice should be continued which is capable of abuse, or at least of being the ground of uneasiness and jealousy." It is but just to the learned judge before whom the case was tried to say that his conduct in the matter involved no moral delinquency on his part, nor, so far as we can see, did it in any way affect the verdict

of the jury. We approve the remarks just quoted, and think they are supported by the overwhelming weight of authority.'

"The case of Danes v. Pearson, supra, is a very strong one on this question, and we think is quite applicable here. The three sections of the syllabus in said case as contained at page 976 of 33 N. E. (6 Ind. App. 465) read:

" '1. Where the trial judge, without the knowledge or consent of the parties, enters the jury room while the jury are deliberating on their verdict, and communicates with them in reference to ordering supper if they were not likely to agree before meal time, the verdict will be set aside, and a new trial granted, though the communication is harmless in itself, and made with the best of motives.

" '2. Rev. St. § 539, providing, inter alia, that "the officer having the jury in charge shall not suffer any communication to be made to them, or make any himself, except to ask them if they have agreed upon their verdict, unless by order of the court," only authorizes the presiding judge to communicate with the jury, through the bailiff, as to formal matters, and does not authorize him to personally communicate with them, in their jury room, while considering their verdict.

" '3. The fact that one of appellants' attorneys was in the courtroom, and saw the judge enter the jury room, and made no objection at the time, does not estop such party from urging the misconduct of the judge in a motion for a new trial filed several days thereafter, since the rule requiring exceptions to proceedings to be taken at the time applies only to proceedings in open court.' "

In reply, the appellee contends the issue was not raised properly; that under the provisions of article 2021, R. S., there should have been a hearing. That article provides:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of same, or because of any communication made to the jury, or because the jury received other testimony, the court shall hear evidence thereof; and it shall be competent to prove such facts by the jurors or others, by examination in open court; and, if the misconduct proven, or the testimony received, or the communication made, be material, a new trial may, in the discretion of the court, be granted."

While there is nothing in that article that applies to the personal action of the court in communicating with the jury during the recess and not in open court, still it is held in Whitaker v. Browning, 155 S. W. 119, the "statute is broad enough to include the action of the judge now complained of."

The complaint is lodged against the action of the judge. The charge was against him, and he did not deny what was alleged. Whether he said or did anything to influence the verdict of the jury was within the breast of the court before whom the motion was being heard, and this proceeding was one independent of the provisions of the above statute.

It is not alleged, nor attempted to be shown, that the complained of irregularity injured appellant, and this case is not to be governed by that line of authorities that require the proof of any supposed misconduct of the jury to be established, and that it necessarily influenced the verdict improperly to the prejudice of appellant. In such cases some injury must be shown. Appellant here distinctly disclaims and says:

"No personal reflection whatever upon the trial judge is made or intended to be made by the appellant. But appellant most respectfully and most earnestly contends that under the statutes and decisions of Texas, the judgment in this cause should be reversed on account of the matters contained in appellant's first and second propositions above set forth."

[1, 2] Aside from all presumptions in favor of the learned trial judge who tried this case, we cannot permit ourselves to believe for one moment that he said or did an improper thing to influence that jury. So the question before us is whether or not he violated any precedent or procedure that comes down to us "from whence the memory of man runneth not to the contrary." Upon that issue this judgment must stand or fall—not upon whether the statute has been followed by the trial of the issue without oral proof before the very judge having the matter in hand, who kept silent when he was called upon to speak, but because his act was contrary to the law. No proof was needed for that purpose, nor technicality standing in the way of the solution of that question on its merits. There may not have been any injury done save that the judge, no more than any other person in the manner shown, could communicate with the jury, whatever that communication may have been. Appellants could not show what that communication was, could only show the presence of the judge in personal communication with the jury out of the open court, out of the presence of the parties, and not where the judge and the jury should be when in communication with each other.

The writer of this opinion has very strong and fixed views in respect to the duty of trial judges. From his long experience as a practitioner he has observed how the jury watch every act of the judge and are impressed by every expression, look, or word of his. "To administer justice is a divine attribute, and there is no other power man can exercise over his fellow man that is akin to or approaches it."

It is not here shown affirmatively that the action of the learned judge or any thing he said, whatever it was, or did improperly influenced a verdict, but the assignment is sustained because the law so says.

Appellant's third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth assignments are nothing more nor less than a complaint one way or the other that an instructed verdict should be given. We find

much difficulty in considering assignments so general in their nature, which require us to hunt out and restate and discuss the same, and which can only be done in a most general way.

The contract of June 5, 1919, the basis of this litigation, was a contract whereby R. K. Harris and the other appellees transferred to appellant an undivided four-eighths interest in the oil and gas lease for 42 acres in Stephens county; lease having been executed by T. A. Ince and his wife, Bessie, September 1, 1916, originally made to S. D. Felt from whom appellees acquired same by mesne conveyances.

The lease was in the usual form of such leases, and provided, among other things:

"Provided, however, that this grant shall become void unless grantee shall, within one year from the date hereof, begin the drilling of a well on said land, or, failing to do so, shall thereafter pay to grantor the sum of $40 on or before the beginning of each period of 12 months after until a well shall be begun.

"That all payments to the grantor (rentals) shall be made by check payable to and mailed to T. A. Ince at Breckenridge, Tex., or by check made payable to T. A. Ince and deposited in the First National Bank of Breckenridge, Tex."

Such leases seem, as this one does, to continue in effect for a period of 10 years by paying annual rentals. Time in such cases is the essence of the contract. In this case rents were paid to keep the contract alive until September 1, 1920.

Appellees claimed an agreement with appellant that he would pay the rents falling due on September 1, 1920, should a well not sooner be commenced. None of the appellants paid that installment, and no well was commenced on the tract of land, and the jury found, in response to special issue No. 4, that T. A. Ince, the lessor, forfeited the lease on September 1, 1920.

[3, 4] Upon the default of the payment of the rent, which payment would have enabled the lessee to continue the contract without performing the obligations in respect to drilling, etc., therein expressed, he was entitled to have notice of the purpose, on the part of the lessor to forfeit. Such leases are no more than a contract giving the option of the lessee to enter upon the property and begin drilling within a certain stipulated period of time, to be renewed from time to time by the payment of the stipulated rental. When not paid, the right no longer exists. All such contracts are to be construed most favorably in the interest of the owner of the land. So the failure to begin a well and failure to pay the rents when due terminates all the rights the lessor had to continue the contract, and nothing but the act or favor of the landlord will give any further right to enter the premises and explore for gas or oil. It is as fully terminated and ended as though no contract ever existed. It is said in Thornton on Oil

& Gas, vol. 1, p. 303, "a refusal on the part of the lessor to accept rent of the lease is sufficient notice of an intention to terminate the lease."

The jury found, in answer to special issue No. 1, appellant prior to September 1, 1920, agreed with appellee he would pay the rental but failed to do so, so that the lease lost all vitality on September 1, 1920, for any and all purposes.

[5] Stipulations in such leases for the drilling of wells and payment of rentals to continue in effect such options are nothing more than conditions for the continuation or termination of the lease term, and not covenants by the lessee. Hence only some equitable defense such as waiver or estoppel will prevent the enforcement of the consequences of a nonfulfillment of such condition of forfeiture of the lease. McLaughlin v. Broek (Tex. Civ. App.) 225 S. W. 577; Weiss v. Claborn (Tex. Civ. App.) 219 S. W. 884; Ford v. Barton (Tex. Civ. App.) 224 S. W. 268; Bailey v. Williams (Tex. Civ. App.) 223 S. W. 311–313; Cockrum v. Christy (Tex. Civ. App.) 223 S. W. 308, 309; Clutter v. Wisconsin, Tex. Oil Co. (Tex. Civ. App.) 233 S. W. 322. Appellant's third and fourth propositions are overruled.

In considering appellant's fourth, fifth, sixth, seventh, and eighth propositions, it is apparent appellant overlooks the question that the Ince lease was forfeited on September 1, 1920. There was evidence after the lease was forfeited and suit instituted November 6, 1920, appellee Harris, for himself and others, on December 8, 1920, executed to L. J. Derrick and F. C. Randlett an instrument attempting to assign the 42 acres of the Ince lease. It provided, if it be found in the opinion of the grantee's attorneys "that said title cannot be made good in the grantor, then this assignment and conveyance shall be null and void and this agreement terminates."

Neither Derrick nor Randlett nor any other person attempted to take possession of the lease and enter upon the land to bore for gas or oil.

On August 23, 1921, Ince and wife gave L. J. Derrick a new oil lease on the land in question. On August 25, 1921, appellee Harris undertook to release to Ince the old lease of September 1, 1916. At the time Harris executed this release, Derrick, who had procured a new lease from the landowner, made a contract with Harris whereby Harris should receive $8,400 in oil, should any oil be produced on the land under the new lease. No well had ever been drilled on the land, nor have appellees received the $8,400.

Ince, on January 22, 1921, filed suit in the district court of Stephens county against the appellees and others, including appellant, to remove the cloud from the title to the 42 acres because the lease had terminated on

September 1, 1920; no release thereof being on record.

Appellant insists the action of Harris when he attempted to assign the lease to Derrick and Randlett December 8, 1920, and subsequent release thereunder, constituted an estoppel against the appellees and constituted an election to rescind and retake the property, and precludes any recovery for the purchase price.

[6] The action of Harris constitutes no estoppel, for it in no way injured appellant, nor does it appear that appellant took any action with reference thereto because of any conduct on the part of appellee. As shown and stated, and on the faith of the authorities cited, the lease terminated September 1, 1920, and the subject-matter of the thing to be sold by appellees to appellant under their contract of June 5, 1919, had ceased to have any vitality. It was a terminated contract, and appellees could not rescind and retake it, for it no longer existed. It is therefore apparent that appellees' only remedy was to sue for the agreed price and for damages resulting from appellant's agreement to pay the rentals.

[7] Appellees received no benefits from the contracts made with Derrick and Randlett in December, 1920. There can be no election of remedies unless more than one exists. Lee v. British & American Mortgage Co., 25 Tex. Civ. App. 481, 61 S. W. 134, 137; Wiseman v. Cottingham, 107 Tex. 68–71, 174 S. W. 281; Rector v. Brown (Tex. Civ. App.) 208 S. W. 702–704; Tullos v. Mayfield (Tex. Civ. App.) 198 S. W. 1073; 20 C. J. p. 21.

Appellees never took possession of the leased premises and could not have done so because the lease had expired by its own terms September 1, 1920, long prior to the action taken by appellees in December, 1920, and August, 1921. Appellant's fourth, fifth, sixth, seventh, and eighth propositions are overruled.

While appellant's proposition No. 9 is a correct proposition of law it is not applicable here. While the contract of June 5, 1919, contains a recital that it, together with the $3,000 check of appellant, should be deposited in escrow with L. C. Herrick to be delivered to the respective parties as soon as title should have been examined and approved by appellant's attorney, the contract was never in fact placed in escrow.

Appellant's seventh proposition is:

"As it appeared clearly from the testimony in the case that the three-eighths interest of appellees in the lease retained in the contract of June 5, 1919, if lost, was not lost without the knowledge of appellees and solely through the fault of appellees, appellees were not entitled to recover the $10,000 of the $27,000 sued for for loss of said three-eighths interest, awarded to appellees by the court in the judgment. This proposition is based on and refers to assignments of error Nos. 3, 6, 9, 11, 13, 14 and 15."

[8, 9] The jury found there was a forfeiture, and then in reply to special issue No. 5 found that the forfeiture occurred without appellee's knowledge or any of them at the time of the forfeiture and through the fault of appellant. Special issue No. 5 of the court's charge is in effect similar to appellant's requested special issue No. 3. Having made this requested issue, appellant cannot be heard to complain as to its form, or that there was no evidence to warrant its submission, besides the finding of the jury on the issue. It is shown by the testimony appellees relied upon appellant paying the rental, and had no information that it had not been paid until after September the 1st, 1920, at which time they attempted to pay the rents which Ince, the lessor, declined to receive and forfeited the lease. See Thornton on Oil & Gas, supra. Under the contract of June 5, 1919, appellees had an undivided three-eighths interest in the lease of 42 acres, and there was testimony a valid oil and gas lease was worth $800 per acre, and the jury found the reasonable cash market value thereof on September 1, 1920, of the undivided three-eighths interest in the lease owned by appellees was $10,000.

Here appellant agreed to pay the rents, which were prerequisite to the continuation of the oil and gas lease in full force and effect. It is not of that class of ordinary contracts where the breach was a failure to advance or loan a sum of money. Appellant having entered into an agreement to pay the rents to keep alive the contract to explore for oil and gas, the law does not charge appellee with the duty in advance to act upon any supposition that appellant will breach such an agreement. In such cases as here the breach of the agreement to pay the rents when due terminates at the same instant of time as the lease itself.

The situation here is within the principle laid down in the cases cited by appellee, because when there is an interval of time between the breach of the contract and the accrual of damage, the injured party might have protected himself against the resultant damages by procuring funds from other sources to discharge the obligation. In such cases as here, when in the default of the payment of the rent in oil and gas leases it terminates and forfeits all rights immediately upon default, and there is no further right or option to continue the lease. It is not such a forfeiture as the law abhors, but is such as the law approves. The damages are suffered at once.

We rather think the principle announced in Sutherland on Damages (4th Ed.) vol. 1, p. 283, is applicable here that—

"Where one person furnishes money to another to discharge an incumbrance upon the land of the person furnishing the money, and the person undertaking to discharge it neglects to do so, and the land is lost to the owner by

reason of the neglect, the measure of damages may be the money furnished with interest, or the value of the land lost, according to circumstances. If the landowner has knowledge of the agent's failure in time to redeem the land himself, his damages will be the money furnished with interest; but if he justly relies upon his agent to whom he has furnished money to discharge the incumbrance, and the land is lost without his knowledge and solely through the fault of the agent, the latter will be liable for the value of the land at the time it is lost."

Appellant's eighth proposition is:

"As the testimony clearly showed that a man of ordinary prudence in the conduct of his own business, under the circumstances surrounding plaintiffs, would have paid or deposited the rental due on September 1, 1920, on the lease in controversy, the court should not, in the judgment, have awarded appellees the sum of $10,000 and interest, on account of the alleged loss of the three-eighths interest in the lease in controversy, retained by appellees in the contract of June 5, 1919. No part of said $10,000 and interest should have been awarded to appellees. This proposition refers to and is based on assignments of error Nos. 3, 6, 9, 11, 13, 14, and 15."

[10] The court submitted this very issue to the jury, being requested by appellant's special issue No. 7, and it was answered against appellant to the effect that a man of ordinary prudence under the circumstances would not have paid or deposited the rental. Having submitted this issue and secured a finding against him, he cannot complain. Bitter v. Butchers', etc., Ass'n, 77 S. W. 423; H. & T. C. Ry. Co. v. Trammell, 28 Tex. Civ. App. 1312, 68 S. W. 716.

[11] Appellant's ninth proposition is that the trial court erred in permitting to go to the jury, the evidence of R. K. Harris as to statements made by T. A. Ince in conversation with T. C. Rhodes and Harris, in October, 1920, in the absence of appellant, as being hearsay. To the same effect are appellant's propositions 10 and 11, and we will consider them together.

The testimony was to the effect that Ince had stated he had forfeited the lease for nonpayment of rental on September 1, 1920. The testimony of T. C. Rhodes was to the effect that he saw Rhodes in October at Baird, Tex., and offered to pay the sum of $42 to him for the rentals which became due on September 1, 1920, which Ince refused to accept, and Harris testified Ince stated to him the lease was forfeited on September 1, 1920, but all this testimony was in connection with the refusal of Ince to receive the rental based upon his action in forfeiting the lease for the nonpayment of the very rent they were endeavoring to pay him. Ince's statement added nothing to the fact of forfeiture that had already taken place, but tended to show he was not inclined to waive that by accepting the rent. At that time no well had been commenced, the rent had not been paid, and Ince was refusing to receive the rent.

If any error was committed, it could not have affected the result of the suit and not calculated to prejudice the rights of appellant. Andrews v. Spear's Heirs, 48 Tex. 567; Witt v. Teat (Tex. Civ. App.) 167 S. W. 302; Owens v. Bank (Tex. Civ. App.) 167 S. W. 798; Burlington Buggy Co. v. Usrey (Tex. Civ. App.) 209 S. W. 684. And the same reason applies to the action of the court in admitting the certified copy of the petition of Ince, heretofore referred to, filed to remove the cloud to the title filed in Stephens county, which occurred by the registration of the Ince lease.

[12] In considering this case, in so far as it relates to the item of $3,000 agreed by the appellant to be paid to the appellees upon the approval of the title by appellant's attorneys, it should be observed that appellant's attorneys were the firm of Ledbetter, Stuart, Ball & Ledbetter, of Oklahoma City, Okl., and that these attorneys approved the title on July 5, 1920. There is therefore in this case no issue as to the appellees having tendered the appellant a defective title. The item of $3,000, according to the contract of June 5, 1919, should have been paid upon the examination and approval of the title; and, this approval having been given on July 5, 1920, the item of $3,000 immediately became due and payable by the appellant.

After a careful examination of this record and the assignments and propositions presented and urged by appellants, we are convinced no reversible error is assigned except in the action of the judge above set out, and for that reason alone the judgment of the trial court is reversed, and the cause is remanded for another trial.