Per Curiam.
The order is affirmed upon the opinion, delivered at Special Term by Judge Sanford, with ten dollars costs, and disbursements to be taxed.
At Special Term.
Sanford, J.
Upon the argument of this motion, 1 was disposed to direct that it be brought on before the judge who tried the cause, upon his minutes of trial, or on a case regularly made and settled by him. In Nesmith v. Clinton Fire Insurance Co. (8 Abb. Pr. 141), this course was suggested-as proper, and the hearing of like motions, before a different judge from the one who tried the cause, was declared to be “ a practice to be discouraged.” But in this case, as in that, the material facts appear not less fully in the affidavits submitted than they would in a case, as they are substantially undisputed. I have, therefore, consented, with the approval of the learned judge before whom the trial was had, though not without embarrassment, to dispose of the motion on the papers presented, and thus save to the parties the expense and delay incident *172 to a further hearing elsewhere. I do so the less reluctantly in that a careful and extended examination of authorities has satisfied me that the question admits of but one solution : and, I may add, that the case above cited is, itself, a precedent for such action.
The cause has been twice tried, the first trial resulting in a disagreement of the jury. Upon the second trial, which commenced on the 10th and was continued until the 13th of January instant, a verdict was rendered for the defendant, which is now sought to be set aside for irregularity.
The action was brought to recover damages for personal injury sustained by the plaintiff, a lad employed by defendants, through their alleged negligence in the faulty construction and management of a lift or elevator, in use at their factory. After the charge of the court had been delivered permission was accorded to the respective parties to take such exceptions thereto, as they might thereafter be advised, and the jury retired to deliberate. The court, thereupon, proceeded with the trial of another case, counsel on both sides remaining in the court room to await the verdict. While engaged in their deliberations, and before a verdict had been agreed upon, the jury addressed to the judge a written communication which was brought in by an officer and handed to him, and to which he responded in writing.
That communication and the response thereto were as follows
Q. “ When Mr. Eckhart notified Mr. Dunn that the elevator was dangerous for the use of boys was Dunn negligent in law in not notifying the Appletons, and were the Appletons thereby made responsible in law?” “ Ans. Appletons were not liable, even though Dunn was notified.”
The attention of counsel does not appear to have been in any way attracted to this correspondence.
*173 A second written communication was subsequently addressed by the jury to the judge, which was in like manner responded to by him as follows :
Q. “If Mr. Dunn "was not a competent superintendent, does that make the Appletous liable?” Ans. “All the evidence was that Dunn and the other servants were competent. I charged that being so, the Appletons were not liable. The jurors must find accord in g to the evidence in the case.”
While such second communication from the jury was in the hands of the judge, and before he had replied thereto, the plaintiff’s counsel, who was sitting near the counsel for defendants, privately remarked to him, that the judge had received some communication from the jury and was writing an answer thereto, and inquired vs hether they ought not to know what it was. To which defendants’ counsel replied that of course either party would have the right to except to such communication as part of the judge’s charge. The judge afterward sent out his answer to the jury, in the presence of counsel, without objection irotn either, and without any attempt, on the part of either, to ascertain wdiat the communications were.
Aiterwards, and when the jury had been out altogether for about three hours, they addressed to the judge a third communication in writing, to the following effect:
Ques. “Does the judge mean by his last communication that the jury are not to consider the competency of Mr. Dunn ? ”
On receiving this inquiry, the judge called counsel on both sides, to the bench, and informed them of its import; whereupon a discussion ensued as to what further communication, if any, should be sent to the jury in answer to the above message from them. This .discussion resulted in the judge’s sending word to the jury that he had no further communication to make to *174 them, but that they might come into court if they desired. Very soon after, the jury came into court, and being interrogated as to whether they had agreed upon a verdict, answered that they had, and thereupon rendered their verdict for defendants.
Counsel for the defendants insists that the instructions contained in these communications were in no respect at variance with the charge as originally delivered, and that during the discussion above referred to, the plaintiff’s counsel made no objection to the judge’s having communicated with the jury as aforesaid. It appears, however, from the moving affidavit on the part of the plaintiff, that the two communications were not seen by, and that their precise nature was unknown to plaintiff’s counsel, until after the discharge of the jury and the adjournment of the court.
• Counsel for defendants now stipulates that exception may be. taken to the said "written instructions, as a part of the charge, and it will be assumed, for the purposes of the motion, as contended by him, that the rules of law, laid down in the said communications as applicable to this case had been on the trial fully and freely discussed and determined by the court as the law of the case, and had been clearly expressed in the charge, as originally delivered.
The course pursued by the learned judge with respect to the final communication received by him from the jury was in accordance with the well settled » and established usage and practice of the common law, as administered in England and in this State. Had it been adopted in the first instance, the proceedings would not have been open to adverse criticism.
In Burrows v. Unwin (3 Carr. & P. 310), which, like the present, was an action on the case for negligence, the jury, after their retirement, sent in a message desiring to have a certain law book sent to them from the library of the court. Lord Tenderden, C. J., *175 asked the counsel, on both sides, if they objected, and they answered that they did not. His lordship, however, observed: “The regular way is for the jury to come into court and state their question and receive the law from the court, and for the sake of precedent, that course should be adopted now.”
The rule thus recognized and from which, on grounds of public policy, his lordship was unwilling to depart, has been so far relaxed by our own courts, as to admit of written instructions being sent by the court to the jury, at their request, if both parties expressly consent; but I have been unable to discover any reported case in which, without such consent, communications of the kind have been sanctioned or countenanced. It has even been held "that such consent must be affirmatively proved and may not be inferred. “ The history of the law,” as was well observed in the case of ‘O’Brien v. Merchants’ Fire Ins. Co. (38 N. Y. Superior Ct. R. 482), ‘1 discloses a struggle for centuries, to prevent juries from being approached by improper communications;” and I think it as essential to the important and effective administration of justice that the opinions and instructions of the court should be openly and publicly imparted, so far as litigants are concerned, as that the deliberations of the jury should be conducted with secrecy and in seclusion. Repeated infractions of this salutary rule in exceptional instances, varied in accordance with the exigencies of each particular case, would gradually fritter it away, and ultimately effect its complete abrogation. It should be permanent a’ d immutable. If trial by jury is to “remain inviolate forever,” every safeguard to its sanctity must be jealously upheld.
In Sergeant v. Roberts (1 Pick. 337), a verdict was set aside, under analogous circumstances, notwithstanding that the course pursued by the court had the sanction of an old local practice. That practice was *176 condemned as “ dangerous to the rights of parties and opposed to the spirit of the common law, which demands that everything given to a jury, in relation to a case before them, should be given in open court, in the presence of all interested or authorized,, for criticism, for suggestion, to guard agai'nst injustice and error, and to afford the means of remedying or correcting them.” Like views were expressed, and a Jike result ensued in Merrill v. Nary (10 Allen, 416), and in Slate v. Smith (6 R. I. 33).
The decisions of our own courts are undeviatingly to the same effect, and mainly upon the ground that “ such a practice would be dangerous ” (Bunn v. Croul, 10 Johns. 248; Taylor v. Betsford, 13 Id. 487).
In the case last cited, the court refused to inquire whether the information given by-the justice was material or had any influence upon the jury. The practice was condemned as dangerous and improper, and one that “ ought to be guarded against ” (see also Rogers v. Moulthrop, 13 Wend. 274; Moody v. Pomeroy, 4 Denio, 115).
The cases of Bunn v. Crowl, and Taylor v. Betsford, were approved in Watertown Bank v. Mix (51 N. Y. 558), where it was said that “ There ought to be no communication between the judge and the jury after they have gone from the bar to consider of their verdict in relation to the oral evidence or his instructions, unless it take place openly in court, or with the express assent of the parties.”
Under this- explicit and authoritative exposition of the law, the verdict must be set a,side, not alone on the ground that the rights of the parties to the particular suit have not been fully protected and preserved, but upon broad grounds of public policy, and because, as was said by this court, in O’Brien v. Merchants Fire Ins. Co., above cited “not to set aside the verdict would establish a precedent which *177 would tend to impair the upright and faithful administration of justice.”
Verdict set aside, and new trial ordered with ten dollars costs of motion, to abide the event, and to be taxed in favor of the successful party, with his costs in the cause.