FINN HANNEVIG & COMPANY, INC., Respondent, *v.* MORRIS FRANKEL, Appellant, Impleaded with GEORGE FRANKEL, Defendant.

First Department, December 31, 1926.

Trial — conduct of trial — jury trial — private communications between judge and jury after case submitted, in absence of counsel, requires reversal of judgment.

In this action based on fraud and deceit, the act of the trial judge, in the absence of counsel, in answering questions by the jury after the case had been submitted to them constitutes a reversible irregularity.

APPEAL by the defendant, Morris Frankel, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of May, 1926, upon the verdict of a jury for $16,587.88, and also from so much of an order entered in said clerk's office on the 7th day of June, 1926, as denies said defendant's motion to set aside the verdict of the jury and to vacate the judgment upon the ground of irregularity at the trial.

*Earl B. Barnes* of counsel [*Barnes, Avery & Whiting,* attorneys], for the appellant.

*B. W. Burger* of counsel [*Burger & Burger,* attorneys], for the respondent.

BURR, J. Plaintiff is a domestic corporation and brings the action to recover damages for fraud and deceit. The complaint

alleges that plaintiff in July, 1920, purchased a cargo of coal from the Universal Transportation Company at a price of thirty-four dollars and fifty cents a ton, c. i. f. Sweden, and that it was agreed that the Universal Transportation Company would rebate to the plaintiff the difference between the coal freight actually paid and what the freight would amount to at the rate of fourteen dollars and seventy-five cents a ton; that the freight actually paid was at the rate of twelve dollars a ton and that the defendants falsely represented to plaintiff that the freight paid was at the rate of fourteen dollars a ton and that plaintiff relying upon said false representations accepted a rebate of seventy-five cents a ton instead of insisting upon a rebate of two dollars and seventy-five cents a ton. The cargo consisted of 6,166½ tons, so that the damages demanded amounted to twelve thousand three hundred and thirty-three dollars, with interest from October 1, 1920.

As originally filed, the complaint named as defendants the Universal Transportation Company, a domestic corporation, Morris Frankel, its president, and George Frankel, its vice-president. The action was dismissed as against the defendant Universal Transportation Company by order duly entered at Special Term on October 24, 1923. The suit was continued against Morris Frankel and George Frankel and duly came to trial before the court and a jury on May 6, 7 and 10, 1926, at Trial Term. The jury returned a verdict for the full amount against both Morris and George Frankel, but exonerated the defendant George Frankel from any intention of fraud and deceit. A motion to set aside the verdict was denied and a judgment was duly entered on May 11, 1926.

On May 26, 1926, the defendants Morris Frankel and George Frankel moved at Special Term to vacate the judgment on the ground of irregularity by reason of the fact that during the course of their deliberations the jury had sent communications to the justice presiding at the trial and had been advised by him with respect to the law of the case in the absence and without the knowledge or consent of the defendants or of their counsel. This motion was duly referred to the justice who presided at the trial and was granted by him as to the defendant George Frankel, but denied as to the defendant Morris Frankel. A new trial as to the liability of George Frankel was ordered and by stipulation of the parties has been set over until the determination of this appeal, which is taken in behalf of Morris Frankel from both the judgment and the order denying his motion to vacate the judgment.

It appears from the record on appeal that a few days after judgment had been entered in favor of the plaintiff against George Frankel and Morris Frankel on the verdict returned by the jury,

it was learned that the jury after it had retired and during the course of its deliberations sent a written message by the clerk to the justice who had presided at the trial and was then in his chambers, asking whether it could return a verdict against the defendants Universal Transportation Company and Morris Frankel alone. The clerk brought back to the jury a written reply to said message from the trial justice consisting of the word " Yes." After the receipt of this reply there was further deliberation by the jury and a second message was sent by it through the clerk to the trial justice asking whether it would be legal to find the following verdict: " We find in favor of the plaintiff for the full amount against the two defendants, the corporation and Morris Frankel, but we exonerate George Frankel from any intention of fraud and deceit."

Upon receipt of this message the learned trial justice told the clerk that the jury had found a verdict and directed that it be summoned to the court room. Neither the defendants nor their counsel were present at the times these communications passed between the court and jury, nor did they have knowledge of them or consent to them. Upon being summoned to the court room, the jury returned a verdict in the language of the second message above quoted and by direction of the court a verdict was entered against the defendants Morris Frankel and George Frankel for the full amount of the claim, with interest.

This appeal brings up for review the order denying the motion to set aside the verdict and vacate the judgment as to the defendant Morris Frankel on the ground of irregularity.

The action of the trial justice in receiving the communications with respect to the law of the case from the jury during the course of its deliberations and in replying thereto in the absence and without the knowledge or consent of counsel for defendants was clearly irregular and in my opinion necessitates the vacating of the judgment and the granting of a new trial.

The leading case in this State is *Watertown Bank & Loan Co.* v. *Mix* (51 N. Y. 558). In that case, during the course of their deliberations, the jury sent by the constable in charge of them, to the judge who held the circuit a written inquiry as to whether a certain witness proved on cross-examination a certain fact. The judge, having read it, directed it to be taken to the shorthand reporter who had taken minutes of the evidence on the trial. The reporter looked over his minutes on receiving the paper and then wrote upon it " no such question was asked." It was then handed to the judge and, by his direction, carried to the jury room and delivered to the jury. They subsequently found a verdict for the defendants. The communication between the judge, jury and constable

occurred without the knowledge or consent of the plaintiffs, their attorneys or counsel, and did not come to their knowledge until some days after the trial was ended. Upon these facts, a motion on the part of the plaintiffs was made at Special Term before the judge who conducted the trial to set aside the verdict and for a new trial. This motion was granted. On appeal to the General Term the order was reversed. The plaintiffs then took an appeal to the Court of Appeals.

In reversing the order of the General Term and affirming that of the Special Term, Commissioner JOHNSON said in part: " A question is made preliminarily, that the order is not reviewable in the Court of Appeals, and rested in the discretion of the Supreme Court. * * * If the order in question is not discretionary * * * it is appealable, if the order affects a substantial right. The right is plainly substantial, for it relates to the substance of the jury trial. This mode of contestation is a public proceeding, as well in respect to the production of proof as to the instruction of the jury by the judge. The party has a right to be heard in respect to everything transacted, and to bring in review all the proceedings at the trial. If the judge at the trial had insisted, in the presence of the counsel, on giving to the jury a written answer to the question proposed by them and refused to communicate it to counsel, such a course would have been the subject of an exception, as erroneous. The proposition involved in sustaining what took place at this trial is even more dangerous, for it must go the length of holding that the judge may make such communication to the jury in private, as he thinks right. There can be no other limit since the party has no means of knowing whether the judge has made any communication, nor what was its subject or terms, if any has been made. * * * The case well illustrates what mischief would result from allowing such a discretion to the judge. It is in my opinion better and safer to adhere to the rule, as affirmed by the adjudged cases and by what I understand to be the settled usage in this State, that there ought to be no communication between the judge and the jury, after they have gone from the bar to consider of their verdict, in relation to the oral evidence or his instructions to them, unless it take place openly in court or with the express assent of the parties. (*Bunn* v. *Croul,* 10 Johns. 239; *Taylor* v. *Betsford,* 13 Johns. 487; *Neil* v. *Abel,* 24 Wend. 185, 186; *Sargent* v. *Roberts,* 1 Pick. 337.)

" Thinking it to be shown that the party's right does not rest in the discretion of the judge, that it is a substantial right and that it has been violated in this case, I am of opinion that the order of

the General Term should be reversed, and that of the Special Term affirmed. All concur. Ordered accordingly."

To the same effect is the opinion of Sanford, J., in *Plunkett* v. *Appleton* (51 How. Pr. 469, N. Y. Super. Ct. 1876.) After the jury had retired they sent two written communications to the judge with respect to the law of the case, to which he replied without advising counsel for plaintiff and defendant of his action. A third communication was received by the judge and he then conferred with counsel and sent word to the jury that he had no further communication to make them. The jury then brought in a verdict for defendant. The first two communications were not seen by and their precise nature was not known to plaintiff's counsel until after the discharge of the jury and adjournment of court. Judge Sanford, in setting aside the verdict and ordering a new trial said, in part (at p. 472): " The course pursued by the learned judge with respect to the final communication received by him from the jury, was in accordance with the well settled and established usage and practice of the common law as administered in England and in this State. Had it been adopted in the first instance, the proceedings would not have been open to adverse criticism. In *Burrows* v. *Unwin* (3 C. & P. 310), which, like the present, was an action on a case for negligence, the jury, after their retirement, sent in a message desiring to have a certain law book sent to them from the library of the court. Lord Tenterden, C. J., asked the counsel on both sides if they objected, and they answered that they did not. His Lordship, however, observed: ' The regular way is for the jury to come into court and state their question and receive the law from the court, and, for the sake of precedent, that course should be adopted now.'

" The rule thus recognized, and from which, on grounds of public policy, his Lordship was unwilling to depart, has been so far relaxed by our own courts as to admit of written instructions being sent by the court to the jury, at their request, if both parties expressly consent; but I have been unable to discover any reported case in which, without such consent, communications of this kind have been sanctioned or countenanced. It has even been held that such consent must be affirmatively proved, and may not be inferred. ' The history of the law,' as was well observed in the case of *O'Brien* v. *Merchants' Fire Ins. Co.* (38 N. Y. Super. Ct. [6 J. & S.] 482) ' discloses a struggle for centuries, to prevent juries from being approached by improper communications; ' and I think it is as essential to the important and effective administration of justice, that the opinions and instructions of the court should be openly and publicly imparted so far as litigants are concerned, as that

the deliberations of the jury should be conducted with secrecy and in seclusion. Repeated infractions of this salutary rule, in exceptional instances, varied in accordance with the exigencies of each particular case, would gradually fritter it away, and ultimately effect its complete abrogation. It should be permanent and immutable. If trial by jury is to 'remain inviolate forever,' every safeguard to its sanctity must be jealously upheld."

In *Kehrley* v. *Shafer* ([1895] 92 Hun, 196) the opinion was *per curiam* and in part is as follows: "That the case and exceptions were properly settled in this case we have no doubt. As settled they disclose that after the jury had retired to deliberate upon its verdict, the court received from it a written communication asking the court to give the jury the amount claimed by the plaintiff. The court returned the following answer: Plaintiff claims as follows: 'Note, $107. Interest from June 12, 1879. Meat, $6.60. Interest from June 12, 1879. Plaintiff figures the amount at $12, making in all $125.60. The jury can verify the calculation of interest.' The defendant's counsel objected to the court's communicating anything whatever to the jury not in the presence of the counsel, and especially objected to the communication sent, and excepted to the course pursued by the trial judge in sending it.

" It seems to be well settled in this State that no communication whatever ought to take place between the judge or justice and the jury after the case has been submitted, unless it is in open court, and, where practicable, in the presence of the counsel; that where there has been an infraction of this rule the judgment should be reversed, and that the court will not stop to inquire whether the information given by the judge or justice was material or had any influence upon the verdict of the jury. (*Bunn* v. *Croul*, 10 Johns. 239; *Taylor* v. *Betsford*, 13 id. 487; *Watertown Bank & Loan Co.* v. *Mix*, 51 N. Y. 558; *Valentine* v. *Kelley*, 54 Hun, 78; *Gibbons* v. *Van Alstyne*, 29 N. Y. St. Repr. 461; *People* v. *Linzey*, 79 Hun, 23; *High* v. *Chick*, 81 id. 100; *Seeley* v. *Bisgrove*, 83 id. 293; *Wheeler* v. *Sweet*, 137 N. Y. 435; *Plunkett* v. *Appleton*, 51 How. Pr. 469; *Sargent* v. *Roberts*, 1 Pick. 337.) Applying this rule to the case before us it is quite manifest that the learned county judge erred in communicating with the jury without the consent and under the objection of the defendant, and that the County Court erred in not granting the appellant's motion for a new trial upon that ground." (See, also, to the same effect, *Luft* v. *Kaplan*, 123 Misc. 156; *Boerum* v. *Seymour Realty Co.*, 127 id. 577.)

The authorities above cited condemn the passing of communications between the court and jury in the absence of counsel for the parties, irrespective of whether or not the information asked

for and the instructions given are material to the issues or correct as a matter of law. In this case, however, it is clear that the reply by the court to the first question of the jury was incorrect as a matter of law for the reason that an order had been entered in October, 1923, dismissing the action as against the defendant Universal Transportation Company. It was not a party to the case on trial and a verdict against it could not be received. This the learned trial justice fully understood after the rendition of the verdict, as appears from the following colloquy: "The Foreman: Your Honor, when we handed that slip out we are trying to find out the legal point whether we could hold both of them responsible but holding George free from fraud and deceit. The verdict is against the both. We do not feel as if George Frankel should be branded as being deceitful or fraudulent, but we feel that they should both be liable to the plaintiff. The Court: That clears it up. Mr. Barnes: Both be liable for the damages? The Court: I understand the feeling of the jurors. Juror No. 8: I do not think you do. There is a question here whether George Frankel can be held for the judgment but exonerated from any fraud or deceit; in other words, that George should be held for the judgment but that he should be exonerated. The Court: From any intent of fraud or deceit. Juror No. 8: But that all three should be held in the judgment. The Court: I can only enter it against the two. * * * Then I will hold as a matter of law that we cannot take a verdict against the Universal."

In view of the vast volume of litigation which now engages the time and attention of the courts, it is of the greatest importance to the proper administration of justice that in the disposition of such litigation the safeguards heretofore set up for the purpose of securing to all litigants a fair trial by jury should not be neglected or ignored in the slightest degree and that the rule as laid down in the *Watertown Bank Case* (*supra*) should be scrupulously observed, to wit: " There ought to be no communication between the judge and the jury, after they have gone from the bar to consider of their verdict, in relation to the oral evidence or his instructions to them, unless it take place openly in court or with the express assent of the parties."

The judgment appealed from and the order denying the motion to set aside the judgment for irregularity should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide the event.