LEONARD B. JAMES *v.* STATE OF INDIANA.

[No. 171S9. Filed February 12, 1974.]

*Harriette Bailey Conn,* Public Defender, *Malcolm K. Mc-Clintick,* Deputy Public Defender, for appellant.

*Harriette Bailey Conn,* Public Defender, *Malcolm K. McClintick,* Deputy Public Defender, for appellant.

PRENTICE, J.—This is a belated appeal under Post-Conviction Remedy Rule 2, § 2(B).

Defendant (Appellant), an indigent, was charged with first degree murder, convicted of second degree murder and sentenced to imprisonment for life. The victim was his former wife, she having obtained a divorce from him shortly prior to the murder. Pleas of not guilty and not guilty by reason of insanity were entered, and the court appointed two physicians to examine the defendant as to his sanity as of the date of the homicide. The appeal presents three issues considered in the following order:

I.   The verdict was not sustained by the evidence, in that the State failed to carry its burden of proving the defendant's sanity at the time of the homicide, and specifically that it failed to prove that he had the power of will to resist an impulse to commit the homicide.

II.   The judgment was contrary to law, in that the statute under which he was examined for a determination of his sanity is unconstitutional in that it permits physicians having no specialized training and experience in psychiatry or psychology to express to the jury their opinion upon the issue of the defendant's sanity. Alternatively, that the judgment was contrary to law in that the case law of Indiana required the examining physicians to have special qualifications in the area of psychiatry or psychology.

III.   The aforesaid statute was unconstitutionally applied to the defendant, because as an indigent he was unable to rebut the evidence presented by the court appointed physician by other expert testimony.

\* \* \*

ISSUE I. The evidence produced at the trial, viewed most favorably to the State, disclosed that on two occasions several months prior to the homicide, the defendant expressed a design to kill the decedent. On the morning of the homicide, the decedent drove her automobile into a mid-city parking lot in the city of Indianapolis, and the defendant drove his automobile into the lot along side her. The parking lot attendant advised the decedent that the lot was full, but when she attempted to leave, the defendant maneuvered his automobile into such a position as to block her exit. Decedent locked the doors of her automobile, as the defendant attempted to enter it. He returned to his automobile, got a hammer and began breaking the windows of the locked vehicle, first on the passenger side and then on the driver's side. Thereupon, the decedent got out of her automobile and ran down the street; but the defendant dropped the hammer and ran after her, pulling a gun from his pocket as he ran. As they ran, the defendant caught the decedent by the arm and she fell to the pavement. The defendant then fired three shots, reloaded his gun and fired five more shots. He was apprehended by a police officer while attempting to reload his gun a second time. The deceased was struck by four of the bullets from the defendant's gun and died as a result.

The defendant was arrested at the scene immediately following the above related encounter. He appeared calm. He followed the arresting officer's instructions. He made various statements acknowledging that he had shot his wife and said that he did so because she had gotten everything in the divorce action, that he just got mad, and that he shot her to get rid of her and to make sure that she did not do to anyone else what she had done to him. At the hospital, while the police interrogated both the decedent and the defendant, he said to the decedent that he shot her and that he would no longer have to support her family.

Upon the foregoing evidence, the jury was warranted in finding that the defendant was not acting under an irre-

sistible impulse at the time he killed the decedent. Although the medical experts failed to testify with specificity concerning the defendant's power of will to resist an impulse to commit the homicide, they both concluded their testimony with their opinion that he was legally sane at the time of the offense. Even without this testimony, however, or even if the medical testimony had supported the defendant's contention that he acted under an irresistible impulse, the jury was justified, from the other evidence, in concluding that such was not the fact. The ultimate determination of legal sanity was to be made by the jury from all of the evidence of probative value. Doubtlessly, the evidence of declarations made several months earlier to the affect that he would kill the decedent, together with his actions immediately prior to the killing, those occurring during the actual assault and his statements made shortly thereafter weighed heavily upon the jury's determination. They indicated a purposeful killing and not a yielding to an irresistible impulse.

The following language from *United States* v. *Freeman* (2d Cir. 1966), 357 F. 2d 606, 619, quoted by this Court in *Hill* v. *State* (1969), 252 Ind. 601, 617, 251 N. E. 2d 429, 438 explains the responsibility of the jury in such matters.

"* * * At bottom, the determination whether a man is or is not held responsible for his conduct is not a medical but a legal, social or moral judgment. Ideally, psychiatrists —much like experts in other fields—should provide grist for the legal mill, should furnish the raw data upon which the legal judgment is based. It is the psychiatrist who informs as to the mental state of the accused— his characteristics, his potentialities, his capabilities. *But once this information is disclosed, it is society as a whole, represented by judge or jury, which decides whether a man with the characteristics described should or should not be held accountable for his acts.* In so deciding, it cannot be presumed that juries will check their common sense at the courtroom door. (our emphasis) U.S. v. Freeman, supra, p. 619-20."

ISSUE II. The defendant has presented us with no authority in support of his proposition that the statute (Burns Ind.

Ann. Stat. § 9-1702)[1] is unconstitutional in that it makes no requirement that the physicians appointed to examine the defendant possess special competency in psychiatry or psychology. Further, this issue was not raised in the trial court. There has been no showing with respect to qualities possessed by psychologists or psychiatrists and unique with them that would render them and them alone competent to testify as to a person's sanity. These are not matters which we may judicially notice. The Legislature has seen fit to prescribe that such testimony come from physicians and, in this respect, it recognizes them as experts. We are not at liberty to impose further restrictions as requirements of procedural due process, without evidence from which a factual determination could be made that physicians, other than those possessed of specific credentials, are in fact incompetent.

Alternatively to the constitutionality argument, the defendant argues that the case law of this state requires that the examining physicians have special qualifications in the area of psychiatry or psychology and cites *Tyler* v. *State* (1968), 250 Ind. 419, 236 N. E. 2d 815 as support therefor. We do not so interpret that case. Again, this issue was not raised in the trial court. No objection was offered to the testimony of the court appointed physicians, and error not objected to at trial will not be reviewed on appeal. *McMinoway* v. *State* (1973), 260 Ind. 241, 294 N. E. 2d 803, *Pinkerton* v. *State* (1972), 258 Ind. 610, 283 N. E.

---

1. 9-1702 [2291]. Evidence on trial of defendant's insanity—Expert testimony.—At the trial of such cause, evidence may be introduced to prove the defendant's present sanity or insanity, or his sanity or insanity at the time at which he is alleged to have committed the act charged in the indictment or affidavit. When an insanity defense is pleaded, the court shall appoint two [2], or three [3], competent disinterested physicians to examine the defendant, and to testify at the trial. Such testimony shall follow the presentation of the evidence for the prosecution and for the defense, including testimony of medical experts employed by the state and by the defense, if any. The medical witnesses appointed by the court may be cross-examined by both the prosecution and the defense, and each side may introduce evidence in rebuttal to the testimony of such medical witnesses. [Acts 1913, ch. 298, § 2, p. 774; 1927, ch. 102, § 1, p. 268.]

376, *Barnes* v. *State* (1971), 255 Ind. 674, 266 N. E. 2d 617, *Webb* v. *State* (1972), 259 Ind. 101, 284 N. E. 2d 812.

ISSUE III. With regard to the defendant's contention that the statute providing for court appointed experts to testify concerning a defendant's sanity was unconstitutionally applied in this case, the defendant argues that as an indigent he was without means to employ other experts to rebut their testimony, and that this resulted in the denial of the equal protection of the laws under Indiana Constitution Article I, § 23 and Amendment 14, § 1 of the Constitution of the United States. If there was any denial to the defendant in this connection, however, it was by reason of his indigency and not by reason of the statute. The disadvantage, if any, occasioned by his indigency was subject to remedy. The defendant made no request of the court to provide him with the services of a medical expert. Had the defendant made such a request and had such request been denied by the court, we might have a very difficult problem in determining whether or not such services were reasonably necessary to a proper defense, but that issue is not before us.

We find no reversible error, and the judgment of the trial court is affirmed.

Arterburn, C.J. and DeBruler, Givan and Hunter, JJ., concur.

NOTE.—Reported in 307 N. E. 2d 59.