THOMAS LEE CLAY v. STATE OF INDIANA.

[No. 874S166. Filed May 14, 1976.]

496

*Jerry W. Newman*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was charged by indictment with the crime of kidnapping. Trial by jury resulted in a verdict of guilty and appellant was sentenced to life imprisonment.

. The record discloses the following evidence: On July 10, 1972, Mrs. Constance Jean Fleming started to enter her

automobile in the parking lot of her employer. This parking lot was located in Marion County. Appellant came from behind Mrs. Fleming, struck her three times in the face, forced her into the car and got in beside her. He then drove the car on a circuitous route to a cornfield in Johnson County. During the drive Mrs. Fleming attempted to get out of the car, but appellant held her by the wrist as he drove. Appellant warned that he would wreck the car and kill them both if she tried to get away.

Upon arrival at the cornfield in Johnson County, the appellant forced Mrs. Fleming from the car, removed her clothing, forced her to commit sodomy on his person and raped her. He then tied her up with her undergarments and some twine found in her car. After appellant had left with Mrs. Fleming's car, she walked to a highway where she obtained aid.

At the trial Mrs. Fleming testified that the appellant appeared to be sane throughout the ordeal. Two court-appointed doctors testified that from their examination of appellant he was sane at the time of the offense.

Appellant first claims the trial court erred in appointing doctors to determine whether appellant was sane at the time of the alleged crime, before a plea of insanity had been filed, and by refusing to strike the doctors' reports. At the time appellant was arraigned he was represented by counsel. Following the entering of a plea of not guilty, the court appointed two doctors to examine him to determine whether or not he was competent to stand trial and whether or not he was insane at the time the offense was committed. The record does not disclose what conversation may have occurred between the court and counsel at that time. However, there is no showing in the record of any objection by defense counsel at the time the trial judge appointed the two physicians.

From the record before us we must presume the trial judge had good reason to believe the defense of insanity would be

invoked and that he was attempting to comply with the statute in view of such defense. If this were not in fact the case at that time, it was incumbent upon the defense counsel to object to the appointment of the doctors. This he did not do. Therefore, we can only presume that the appointment of the doctors met with his approval at that time. It was only after the report of the doctors indicated that appellant was sane at the time of the offense and competent to stand trial that we see the first objection to their appointment in the record. We would point out that appellant did in fact invoke the defense of insanity during the course of the trial. We, therefore, hold that no error is presented by this record concerning the appointment of the doctors. *James* v. *State*, (1974) 261 Ind. 495, 307 N.E.2d 59, 40 Ind. Dec. 584.

Appellant next argues that when he did raise the issue of his sanity the doctors who had been appointed by the court were not "disinterested" as required by law because they had examined the appellant and found him sane prior to his raising the defense of insanity. Here again the argument is raised for the first time on the motion to correct errors. There is nothing in the record to indicate any objection was made at the time of the appointment of the doctors, nor at the later time when the appellant petitioned for the appointment of two different doctors. Thus, here again the question is waived. Ind. R. Tr. P. 46; *James* v. *State, supra.* We would further point out that appellant's contention the first doctors appointed were not disinterested because they had examined him previously does not impress us. There is nothing in this record to indicate that the doctors were prejudiced because they had examined the appellant prior to his plea of insanity. The integrity of the doctors has not been questioned. The mere fact the trial court had appointed them to examine the appellant and the fact that they did examine him does not give rise to any inference that they would, in any sense, be prejudiced one way or the other in the case.

Appellant next claims the trial court erred in allowing the court-appointed doctors to testify during the trial that appellant was sane and that the jury was advised by the court that it had appointed the doctors. Here again, no objection was made at the time of the questioning of the doctors. The statute under which these doctors were appointed reads as follows:

"At the trial of such cause, evidence may be introduced to prove the defendant's present sanity or insanity, or his sanity or insanity at the time at which he is alleged to have committed the act charged in the indictment or information. When an insanity defense is pleaded, the court shall appoint two [2], or three [3], competent disinterested physicians to examine the defendant, and to testify at the trial. Such testimony shall follow the presentation of the evidence for the prosecution and for the defense, including testimony of medical experts employed by the state and by the defense, if any. The medical witnesses appointed by the court may be cross-examined by both the prosecution and the defense, and each side may introduce evidence in rebuttal to the testimony of such medical witnesses." IC 35-5-2-2 (Burns 1975)

The trial judge followed the mandate of the above-quoted statute. The doctors the court had appointed testified following the evidence presented by the State and by the appellant. This statute is a proper exercise of the legislative prerogative to insure a fair and just trial for persons who could possibly be found to be insane. The method of procedure outlined is calculated to insure fairness rather than to create undue emphasis upon the evidence presented.

Appellant cites the cases of *People* v. *Dickerson*, (1910) 164 Mich. 148, 129 N.W. 199 and *People* v. *Scott*, (1927) 326 Ill. 327, 157 N.E. 247. In each of these cases the courts were faced with a statute similar to the above-quoted Indiana statute and in each case the courts held that it was improper for court-appointed experts to examine a defendant as to insanity. However, these cases have been criticized. See 2 Wigmore, *Evidence,* § 563, n. 7. The leading case in support

of statutes allowing the court to appoint experts and to examine them at the trial is *Jessner* v. *State*, (1930) 202 Wis. 184, 231 N.W. 634. In the *Jessner* case the Court stated:

"By the statute under consideration the legislature has deliberately attempted to regulate the subject of expert evidence in criminal trials, to the end that there may be some evidence in the case, not bought and paid for, coming from impartial witnesses who owe no duty or allegiance to either side of the controversy, and that the fact of their impartiality shall be made known to the jury. Whether the sponsoring of any witness by the court is good public policy is no longer a matter of judicial opinion. The dominant opinion of the legislature upon that subject has received expression, and its expression upon matters of public policy prevails unless it contravenes constitutional provisions. We find no constitutional provision relating to jury trials which prohibits the practice thus prescribed by the legislature." 202 Wis. at 193.

We hold the trial judge properly exercised his duties under the statute and that the statute does not violate a defendant's right to a fair and impartial trial.

Appellant next claims he was denied due process of law when the court personally conducted hearings to determine his competency to stand trial. He cites the case of *Schmidt* v. *State*, (1974) 159 Ind. App. 412, 307 N.E.2d 484, 40 Ind. Dec. 733. The holding in the *Schmidt* case is not applicable to the case at bar. In *Schmidt*, after his conviction defendant petitioned to be treated as a criminal sexual deviant. Two psychiatrists, appointed by the court, testified at a hearing that Schmidt was not a criminal sexual deviant, but was insane and incompetent to stand trial. In making his finding that Schmidt was not a deviant, the trial court stated that Schmidt's demeanor at trial demonstrated his competency throughout. The Court of Appeals held that while the trial judge's observations were competent evidence, they made the judge a witness and disqualified him to conduct a hearing on Schmidt's competency. In the case at bar, the trial court did not act as a witness in any manner at the competency hearing. We, therefore, hold there is no reversible error

shown by the record in this case concerning the hearing on appellant's competency to stand trial.

Appellant next claims the trial court erred in allowing the prosecuting attorney to mention in his opening statement other criminal acts by the appellant occurring in Johnson County. This claim stems from the fact that appellant was charged only with kidnapping in Marion County, but that the prosecuting attorney was allowed to speak of the continuing results of that kidnapping, in that the victim was transported from Marion County into Johnson County where she was raped and where acts of sodomy were committed. Even though the appellant was not charged with the crimes which occurred in Johnson County, those acts were all part of the res gestae of the crime which had been commenced in Marion County with the kidnapping. Admission of evidence of non-charged crimes is proper where each of the crimes is a part of an uninterrupted transaction. *Thomas* v. *State*, (1975) 263 Ind. 198, 328 N.E.2d 212, 47 Ind. Dec. 74. We, therefore, hold evidence of the acts committed by the appellant during this entire transaction were admissible. The trial court did not commit error in permitting this evidence to be alluded to by the prosecuting attorney in his opening statement and established in the State's case in chief.

Appellant next claims the verdict is contrary to law because the transportation "occurred only as a subsidiary incident to the crime of rape," and that, therefore, the penalty is not proportioned to the offense. This issue has been raised in Indiana in previous cases and decided contrary to appellant's position. *Wilson* v. *State*, (1970) 253 Ind. 585, 255 N.E.2d 817, 21 Ind. Dec. 1; *Critchlow* v. *State*, (1976) 264 Ind. 458, 346 N.E.2d 591, 52 Ind. Dec. 373.

Appellant next claims the trial court erred in excluding testimony of his mother to the effect that he was injured in Viet Nam and that he had attempted suicide. The record indicates that her knowledge of these instances was based

on hearsay. Thus, the trial court did not err in sustaining the objections. *Wells* v. *State,* (1970) 254 Ind. 608, 261 N.E.2d 865, 22 Ind. Dec. 573. Appellant also claims the trial court erred in excluding newspaper articles offered to prove that he had been wounded in Viet Nam. These exhibits were also properly refused by the trial court on the ground they were hearsay.

Appellant next claims the trial court erred by striking testimony of his mother to the effect, "his mind went blank," when he attempted to kill his younger brother, and, in striking her response, "he came back to his senses," after she shook him. Although it is perfectly proper for a lay witness to give an opinion as to the sanity of a person, *Huddleston* v. *State,* (1973) 260 Ind. 398, 295 N.E.2d 812, 36 Ind. Dec. 493, the statements excluded by the judge in this instance were conclusions by the witness as to the thought process of the appellant. As such, they were not admissible. *Gayer* v. *State,* (1965) 247 Ind. 113, 210 N.E.2d 852, 6 Ind. Dec. 583. We point out that the mother's testimony was received concerning her opinion as to her son's condition.

Appellant next claims that the trial court erred in refusing to admit a purported copy of a military medical record. This record indicated that it was not complete and it was not certified by the keeper of the Army Health Records, nor was there any such witness present in the courtroom to authenticate the instrument. In this situation, the trial court did not err in refusing to admit the purported records. See McCormick *Law of Evidence,* 2d Ed., § 313; *Herman* v. *State,* (1965) 247 Ind. 7, 210 N.E.2d 249, 6 Ind. Dec. 391.

Appellant next claims the trial court erred in not enforcing his subpoena to the keeper of the health records at Fort Harrison. The record shows that the court offered to enforce any subpoena issued by appellant if proof of service could be shown. Appellant's counsel stated to the court that the

return of service was in his office. Such proof of service was not in compliance with Ind. R. Tr. P. 45(A). Thus the trial court did not err in refusing to enforce the subpoena.

We find no reversible error in this record. The trial court is, therefore, affirmed.

Arterburn, DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 346 N.E.2d 574.