**Conrad Eugene DECKER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–877–A–331.**

Court of Appeals of Indiana, Fourth District.

March 5, 1979.
Rehearing Denied April 17, 1979.

---

Carol Glass, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen. of Indiana, Dennis K. McKenney, Deputy Atty. Gen. of Indiana, Indianapolis, for appellee.

MILLER, Judge.

On March 4, 1977, Defendant was convicted of robbery [1] as an included offense of IC 35–12–1–1,[2] after a trial by jury. On March 23, 1977, the Defendant was sentence to an indeterminate term of not less than ten (10) years nor more than twenty-five (25) years. Thereafter, the Defendant initiated this appeal.

We affirm.

The evidence disclosed that on June 26, 1976, at approximately 9:30 P.M. the Defendant entered a grocery store located near the intersection of 30th Street and Emerson in Indianapolis, Indiana, known as Wiles and Roy's Market which was incorporated in the State of Indiana as Dormas, Inc. Present in the store were Charles Dorman, part-owner of the business, his daughter Sandra Dorman, age 13, his daughter Connie Dorman, age 20, and a nephew Gary Dorman, age 16. Charles Dorman was in the office in the front of the store, Connie Dorman was sacking groceries at the cash register, Gary Dorman was standing approximately ten feet from the cash register at the front of the store and Sandra Dorman was working the cash register at the front of the store. The Defendant approached Sandra and asked for change for the cigarette machine and then said he wanted the rest of the money in the cash register. Sandra noticed he had a gun tucked in his pants. Sandra called for her father who came to the cash register and Sandra advised her father that she was being held up. The Defendant held a gun on Charles Dorman while Sandra removed money in the amount of approximately $113.00 and an unknown quantity of food stamps from the cash register and gave them to the Defendant. The Defendant backed out of the store and left.

At trial all four Dormans identified the Defendant as the robber.

On appeal the Defendant argues the following issues in his Brief:

1. Did the trial court err in overruling the Defendant's motion to suppress the in-court identification of the Defendant by the eyewitnesses to the crime for the reason that the pretrial identification procedure was impermissibly suggestive?

2. Did the trial court err in overruling a motion by Defendant's counsel to withdraw his appearance?

3. Was there sufficient evidence to support the jury's verdict?

4. Did the trial court abuse its discretion in allowing the jury to continue deliberations after being notified by the jury that they had reached an impasse?

5. Did the trial court err in giving instructions numbered 5 and 5A which dealt with the law of reasonable doubt?

6. Did the trial court err in its instruction numbered 19 which dealt with the concept of the possible reduction of Defendant's sentence for good time after confinement.

7. Did the trial court's communication with the jury outside the presence and without the knowledge of Defendant and defense counsel and after deliberations commenced, constitute fundamental error?

ISSUE ONE:

*Impermissibly suggestive pretrial identification.*

Photographic arrays were displayed to each of the four witnesses before trial. Defendant filed a pretrial Motion to Suppress Evidence of the identification of the Defendant which had been made by the witnesses. Grounds for the motion were that the procedure had been impermissibly suggestive in that the identifying witnesses were made aware that a suspect had been arrested and his photograph was among

1. IC 35–13–4–6, Repealed. *See* IC 35–42–5–1 for current version.

2. Repealed. *See* IC 35–42–5–1 for current version.

those displayed to them and that two of the witnesses were aware that the other two witnesses had selected a suspect from the group viewed.

A pretrial hearing on Defendant's Motion to Suppress was conducted and the substance of the testimony revealed that a police officer displayed a group of twenty photographs of subjects similar to the description of the robber to Charles and Sandra Dorman two or three days after the robbery; that the officer separated Charles and Sandra Dorman before he showed them the photographs; that the gallery numbers and physical descriptions on the photographs were concealed from the witnesses; that Charles Dorman immediately selected the Defendant's photograph and identified him as the robber, and that when viewing the same group of photographs as her father, Sandra Dorman indicated that the Defendant's photograph looked like the person who had committed the robbery but she just couldn't say for sure without seeing him in person. Sometime during the month of July the same police officer displayed the same group of photographs, taking the same aforementioned precautions, to Connie and Gary Dorman separately and each independently selected the Defendant's photograph and identified him as the robber.

The trial court found that the pretrial photographic identification procedure was not impermissibly suggestive and overruled Defendant's Motion to Suppress.

On appeal the Defendant asserts that the trial court erred in overruling his Motion to Suppress and that the four witnesses had an insufficient independent basis for the in-court identification for the reason that the pretrial identification procedure was impermissibly suggestive.

There is no evidence in the record to indicate that the officer informed or suggested to any of the witnesses to the crime that one of the photographs in the photographic array was that of a person who had been arrested and charged with the crime. Neither was the Defendant singled out by the authorities nor a strong suggestion made to any of the witnesses that he was the person who committed the crime. The cases cited by the Defendant, *Vicory v. State* (1974), 262 Ind. 376, 315 N.E.2d 715; *Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691 and *Sawyer v. State* (1973), 260 Ind. 597, 298 N.E.2d 440, where the identification procedures were suggestive are therefore not applicable.

Furthermore, our Supreme Court in *Popplewell v. State* (1978), Ind., 381 N.E.2d 79 stated that where an officer presenting pretrial photographic identification displays indicates that the suspect's photograph is included the rule is ". . . that convictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground *only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.*" (emphasis added)

The record indicates that the four Dormans were eyewitnesses to the crime and as such had sufficient independent basis for their in-court identification. *Cooper v. State* (1977), Ind., 359 N.E.2d 532. They had ample opportunity to observe and identify the robber. The store was well lit and the robber wore no mask. Charles, Sandra and Connie Dorman were at the cash register and Gary Dorman was standing approximately ten feet away while the robbery was in progress. At trial each of the four Dormans identified the Defendant as the robber. Under these circumstances we conclude that the photographic identification procedure was not impermissibly suggestive, that the four eyewitnesses to the crime had a sufficient independent basis for the in-court identification and that there was no likelihood of misidentification. We find no error in the trial court's overruling of the Defendant's Motion to Suppress the in-court identification of the Defendant.

Furthermore, the Defendant posed no objection to the in-court identification made by any of the four Dormans. Hence, even if the photographic displays had been impermissibly suggestive or the Dormans

did not have a sufficient independent basis for their in-court identification of the Defendant, the Defendant failed to preserve the error since there must be a proper objection made at the time evidence is offered in order to preserve the error for appeal. *Lagenour v. State* (1978), Ind., 376 N.E.2d 475; *Carpenter v. State* (1978), Ind.App., 378 N.E.2d 908.

ISSUE TWO:

*Motion to withdraw appearance.*

██ The Defendant next states that the trial court erred in overruling the motion of Alex Rogers to withdraw as Defendant's attorney, claiming there was an alleged conflict between Rogers' representation of the Defendant and the Defendant's interest. This Court can find no evidence of such conflict in the record of the proceedings.

On September 24, 1976, when this action was initiated, Merle Rose was appointed as public defender to represent the Defendant. On October 26, 1976, Alex Rogers entered an appearance on behalf of the Defendant. On February 1, 1977, Rogers filed a motion to withdraw his appearance for the Defendant. The only reason given by Rogers for his request to withdraw was that the Defendant was unable to pay Rogers as agreed. In his motion Rogers suggested that the trial court reappoint pauper counsel. The trial court denied Rogers' motion and reappointed Merle Rose as co-counsel.

The Defendant claims a conflict of interest with attorney Rogers but the record does not disclose such conflict or any prejudice to Defendant. If the Defendant is regarded as challenging Rogers' competency or adequacy of representation, we note the general rule that counsel is presumed competent in the absence of strong and convincing evidence to the contrary. *Cushman v. State* (1978), Ind., 378 N.E.2d 643; further, the presumption prevails unless there is evidence that counsel made the proceedings a mockery of justice. *Cottingham v. State* (1978), Ind., 379 N.E.2d 984. On behalf of Defendant, counsel filed a Notice of Alibi and Motion to Suppress. He

conducted the hearing on said motion, cross-examined the State's witnesses in some detail during trial, called and examined six defense witnesses and submitted jury instructions to the court. We find that the record does not support Defendant's assertion of incompetent or ineffective representation.

ISSUE THREE:

*Sufficiency of the Evidence.*

The Defendant next claims that the evidence is insufficient to prove that the Defendant took $113.00 from Sandra Dorman, which was the property of Dormas, Inc., all as charged in the Information, and that the evidence was insufficient to show that it was the Defendant who committed the robbery.

The standard of review in determining the sufficiency of the evidence is set out by the Supreme Court in *Faust v. State* (1977), Ind., 366 N.E.2d 175 at page 176 as follows:

"When reviewing the sufficiency of the evidence, this Court does not weigh the evidence or review the credibility of the witnesses; we consider only the evidence most favorable to the verdict, together with the reasonable inferences to be drawn therefrom. The conviction will be affirmed. if there is substantial evidence of probative value from which the trier of fact could reasonably infer the defendant's guilt beyond a reasonable doubt. *Daniels v. State*, (1976), Ind., 346 N.E.2d 566."

The evidence most favorable to the State reveals that Sandra Dorman at the time of the robbery was working the cash register when the Defendant, armed with a gun, demanded money. She personally gave the Defendant "bills, food stamps and change." Charles Dorman, co-owner of Roy's Market, testified as to the amount of money taken in the robbery. He further testified that Roy's Market was incorporated under the name of Dormas, Incorporated and that the corporation was duly incorporated to do business in the State of Indiana.

Charles Dorman, Sandra Dorman, Connie Dorman and Gary Dorman, who were present in the store at the time of the robbery, all identified the Defendant as the robber.

When the Defendant appeared in front of Sandra Dorman and demanded the money in the cash register, Sandra Dorman called her father to the cash register and asked him what she should do. Charles Dorman told his daughter to give the Defendant what he wanted. The Defendant now argues that the property taken was taken from the person and possession of Charles Dorman since Charles Dorman told his daughter Sandra to give the Defendant what he wanted. The Defendant's argument is not well taken. It was Sandra Dorman who, as an employee and agent of the owner, was in lawful possession of the money as a cashier and gave the Defendant the money from the cash register. We find no variance in this respect between the allegation in the Information and the evidence. *Riley v. State* (1976), Ind., 349 N.E.2d 704; *Jackson v. State* (1971), 257 Ind. 477, 275 N.E.2d 538.

The Defendant's allegation that he was insufficiently identified as the perpetrator of the robbery is without merit in view of the positive identification of four eyewitnesses to the robbery.

Lastly, Defendant contends the State failed to prove that Dormas, Inc. was the owner of the money taken as alleged in the Information. The same contention was rejected by our Supreme Court in *Jackson v. State, supra,* where the Court stated:

"The statute under which appellant was convicted, IC 1971, 35–13–4–6 (Ind. Ann.Stat. § 10–4101, reads as follows:

'Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery, and on conviction shall be imprisoned not less than ten (10) years nor more than twenty-five (25) years, . . . '

"Thus, the material elements for the crime of robbery are (1) an unlawful taking, (2) from the person of another, (3)

any article of value, (4) by violence or putting in fear. [2, 3.] *Jones v. State* (1970), Ind., 262 N.E.2d 538.

Appellant first contends there was a failure of proof as to who owned the money. The affidavit stated who the owner of the money was, and the appellant therefore asserts this must be proven. However, *Thomason v. State* (1970), [255] Ind. [260], 263 N.E.2d 725, involved a situation quite similar to this and the contention was denied. It also involved a service station hold-up, and, in that case, the fact that the attendant testified that the money belonged to his employer was held sufficient. Here the attendant testified he was an employee of the owner so that ownership could clearly be inferred. The statute does not state that the person robbed must be the actual owner of the property. It is sufficient for purposes of this element of the crime if the property be taken from the person of another. See 77 C.J.S. *Robbery* § 7. It is clear from the circumstances of this case that the service station attendant was in lawful possession of that money as the agent of the owner and that his possession of the money was superior to that of the robber. Nothing more was necessary."

Thus, in the case at bar where the money was taken from the lawful possession of Sandra Dorman as alleged, it was not necessary to prove the actual ownership of the money.

ISSUE FOUR:

*Mistrial for jury impasse.*

The Defendant contends that the trial court abused its discretion by not declaring a mistrial when the jury indicated it had reached an impasse and that the record indicates that the verdict may have been coerced.

The portion of the record upon which the Defendant bases his claim is a note appearing in the record which reads as follows:

"We feel that we have thoroughly discussed the case, considered in depth all possible points, have re-listened to selected testimony and there has been *no*

change since the first ballot. It is our consensus that we have reached an impasse and we cannot anticipate a change in the vote.

/s/ U. Price, Foreman"

■ The general rule in Indiana is that the length of time permitted for deliberation by the jury is largely within the trial court's discretion. Thus, conviction will not be reversed when the jury reports it is unable to reach a verdict, is directed to deliberate further and a verdict is later returned unless the trial court has abused its discretion or the record indicates that the verdict may have been coerced. *Cade v. State* (1976), Ind., 348 N.E.2d 394; *Ayad v. State* (1970), 254 Ind. 430, 261 N.E.2d 68.

■ Although the note in question appears in the record and there is an order book entry showing it was "filed" on March 4, 1977, the day the cause was submitted to the jury and the verdict returned, there is nothing in the record before us to indicate at what time the note was received, if in fact it was actually seen by the trial judge, whether a hearing was held thereon, or what action, if any, was taken by the trial court. Absent this information, we are in no position to rule that the court, in some way, abused its discretion or that the jury was coerced in reaching its verdict. Defendant has failed in his burden to produce a record to this Court which supports his allegation of error. *Misenheimer v. State* (1978), Ind., 374 N.E.2d 523; *Smith v. State* (1977), Ind., 368 N.E.2d 1154.[3]

ISSUE FIVE:

*Reasonable doubt instructions.*

The Defendant alleges error in the giving of the State's instructions numbered 5 and 5A and error in rejecting the Defendant's

tendered instructions numbered 1, 2 and 3. The instructions dealt with the concept of reasonable doubt and were as follows:

State's Instruction 5:

"The defendant in this case is presumed to be innocent of the commission of any crime, and this presumption remains during the entire trial. The defendant is not required to present any evidence or prove his innocence. It is the State's burden to prove his guilt, and the defendant should not be convicted unless all twelve members of the jury are convinced of his guilt beyond a reasonable doubt. Therefore, if you have a reasonable doubt as to the defendant's guilt, the defendant should be found not guilty.

The presumption of innocence is not intended to aid anyone who is in fact guilty of a crime to escape from punishment, but is a humane provision of the law which is intended to guard against the danger of any innocent person being convicted."

State's Instruction 5A:

"A reasonable doubt is a doubt that is based upon reason and common sense. It is one which may reasonably arise from the evidence, or from the lack of evidence or from a conflict of the evidence. It exists if you are uncertain of guilt, or if you can only guess or speculate as to guilt.

On the other hand, reasonable doubt is not created by a lack of proof to an absolute certainty, for this is rarely possible. Nor does it arise from the mere possibility of error or mistake or from the fact that you may find some doubt, because in any human activity there always

---

3. We are not unmindful of the statement in the jury's note that "we . . . have re-listened to selected testimony . . . ." Defendant, in his Brief, argues that "it must be presumed that this improper re-listening of selected testimony took place outside the presence of and without the knowledge of the defendant or his counsel". He argues that this was a factor in coercing the verdict but does not assert this as a separate error in his Brief or Motion to Cor-

rect Errors. Again, the record is silent as to what the jury meant by the phrase "re-listened to selected testimony" nor does the record reveal any proceeding wherein the jury was permitted to hear portions of the evidence. Thus, we cannot say the jury was coerced nor are we able to review what obviously might have been reversible or even fundamental error. See authorities under Issue Seven of this opinion.

exists the mere possibility of error or mistake, and you may always find some doubt if you look for it.

You may find guilt beyond a reasonable doubt from all of the evidence if you are convinced that the Defendant did commit the crime rather than probably did; If you are truly convinced of the Defendant's guilt rather than only somewhat convinced; If you are convinced to a reasonably certainty rather than only fairly certain. If you are not so convinced of the guilt of the Defendant, then you should return a verdict of Not Guilty."

### Defendant's Tendered Instruction No. 1:

"The defendant is presumed to be innocent of the commission of any crime and is presumed to be innocent of the offense charged in the information or any offense therein embraced, and this presumption continues throughout the trial step by step. You should reconcile the evidence in this case upon the theory of the innocence of the defendant, if it can reasonably and consistently be done, and there should be no conviction of the defendant unless each member of the jury is convinced beyond a reasonable doubt of his guilt. The law contemplates and indeed demands a concurrence of twelve minds in the conclusion that the accused is guilty, and so long as you, or any of you, have or entertain a reasonable doubt as to the guilt of the defendant, you should resolve that doubt in his favor and he should not be convicted."

### Defendant's Tendered Instruction No. 2:

"The doctrine of reasonable doubt applies to the law as well as to the facts, established or not established by the evidence, and you should give the defendant the benefit of any reasonable doubt you may have as to the law."

### Defendant's Tendered Instruction No. 3:

"A reasonable doubt as the word implies is such a doubt as may arise from the evidence, or from the lack of evidence, or from a conflict in the evidence, concerning a given fact or issue. The rule of law touching upon reasonable doubt is a practical rule for the guidance of practical men and women when engaged in this solemn duty of assisting in the administration of justice. It is not therefore a rule about which there is anything whimsical or imaginary. It is not a mere possibility or error or mistake that constitutes reasonable doubt, for despite every precaution that may be taken to prevent it, there may be in all matters pertaining to human affairs, a mere possibility of error. The rule of law touching reasonable doubt can be and is thus stated for your guidance.

If you, and each of you are so convinced by the evidence, and considering all the facts and circumstances, and evidence as a whole of the guilt of the defendant, that as prudent men and women you would feel safe to act upon such conviction in a manner of the highest concern and importance to your own dearest and most important interests, where there was no compulsion or coercion upon you to act at all, then you will have attained such degree of certainty as excludes reasonable doubt and authorizes conviction of the defendant. If you are not so convinced by all the facts and circumstances, and evidence as a whole, of the guilt of the defendant, you should acquit him."

The Defendant bases his argument on the opinion of this Court in *Toliver v. State* (1976), Ind.App., 355 N.E.2d 856 in which this Court reversed the trial court and held it was error to refuse an instruction containing the identical language of Defendant's Tendered Instruction No. 3 which instructed the jury as to the degree of certainty required to prove reasonable doubt. However, on transfer, the Supreme Court in *Toliver v. State* (1978), Ind., 372 N.E.2d 452 reversed this Court and affirmed the trial court's decision that a reasonable

doubt instruction need not include a specific reference to the degree of juror certainty required, Chief Justice Givan stating as follows:

"The issue on transfer is whether an adequate instruction on reasonable doubt requires language specifically instructing the jury as to the degree of certainty necessary for conviction. It is appellant's contention that he has a right to supplement the court's reasonable doubt instruction with an instruction which focused upon the degree of certainty required to remove reasonable doubt. It is the State's contention that the instruction tendered had a potential of creating a greater standard of proof than our law requires, and therefore was an erroneous statement of law which should not have been given to the jury. We grant transfer and affirm the decision of the trial court.

In the Court of Appeals, Judge Buchanan wrote a dissenting opinion wherein he correctly points out that the trial court's preliminary instruction 3P covered the definition of reasonable doubt and instructed the jury as to the necessity of finding guilt beyond a reasonable doubt. Judge Buchanan further correctly pointed out that the tendered instruction by the appellant erroneously used the word 'certainty'. By so doing, the burden of proof was subtly changed to convey the impression that guilt must be shown to an absolute certainty or beyond all doubt, rather than by beyond a reasonable doubt. We therefore hold that the trial court did not err in refusing to give defendant's reasonable doubt instruction for the reason that its substance was adequately covered by other instructions which were given. *Vacendak v. State* (1976), 264 Ind. 101, 340 N.E.2d 352; *Sargeant v. State* (1970), 255 Ind. 252, 263 N.E.2d 525."

 Therefore, based on the foregoing authority we find the trial court properly instructed the jury as to reasonable doubt. Defendant's instructions were properly refused as their substance was covered by the instructions given. *Toliver v. State, supra,*

372 N.E.2d 452; *Resnover v. State* (1978), Ind., 372 N.E.2d 457, 459.

## ISSUE SIX:

### *Good time instruction.*

 The Defendant claims that the trial court erred in giving an instruction concerning possible reductions in the length of a sentence which the Defendant might receive after the sentence is fixed by the jury. The instruction reads in its entirety as follows:

"A person who is convicted of a crime by a jury is sentenced by the Judge. In many cases the Judge has certain sentencing alternatives which may include probation, restitution, short sentences, rehabilitation programs, etc. In other cases the law requires the Judge to sentence to a term of imprisonment that is either fixed by the law, or set by the Jury.

"A person who is sentenced to imprisonment for less than life is entitled by law to a reduction of his time based upon a certain schedule and upon his behavior in the institution. Also he is given credit toward his sentence for time spent in jail on this charge. For these reasons it is possible that a person could serve considerably less than the stated sentence. On the other hand, it is also possible that a person could serve the full maximum. In either case it is determined by future events beyond our present knowledge or control.

"Therefore, in arriving at your verdict, you should not consider or speculate as to the actual amount of time a person will serve."

The Defendant did not object to the giving of this instruction at trial, nor did he pose the giving of the instruction as error in his Motion to Correct Errors. The Defendant concedes as much in his Brief but nevertheless argues that the giving of the instruction constitutes fundamental error.

Admittedly, in *Feggins v. State* (1977), 265 Ind. 674, 359 N.E.2d 517, our Supreme Court held that the giving of such instruction was error unless the matter of actual

time served was questioned by a juror or inadvertently interjected during the course of the trial.

However, in *Cooper v. State* (1977), 265 Ind. 700, 359 N.E.2d 532 the Supreme Court held that the defendant waived the impropriety of the same instruction being given by reason of his failure to include it in his Motion to Correct Errors. The Court stated that "If the instruction was, in fact, erroneous, it, nevertheless, does not rise to 'substantial error' warranting us in going behind a waiver and litigating that which could and should have been litigated below."

Thus, in the case at bar this issue has been waived.

ISSUE SEVEN:

*Communication with the jury outside the presence of the Defendant.*

During the jury deliberation the court was notified that the jury had a question. The following proceeding occurred in open court with the Defendant and his counsel present:

"*Court*: About an hour ago, I received a question from the Jury, in substance asked whether it was necessary that the gun used be real, a real gun as opposed to a toy gun in order to constitute armed robbery, and I sent an answer back saying yes, and you received that answer, right? All right. Since then you've sent me, actually it's one question in sort of just two prepatory remarks, and the third, or substance of this question is what are the requirements of proof, who is the Foreman, is that what you're asking, what are the requirements of proof?

"*Foreman*: In determining whether it's a real gun or not.

"*Court*: O.K. The requirements of proof to all material elements of the charge is beyond a reasonable doubt, all of them, as I went over putting in fear, take from the person, money, over the age of sixteen, armed with a dangerous or deadly weapon.

"*Foreman*: That's not the question Your Honor. The question was directed specif-

ically as to toy or real gun. Is there any kind of supporting data, reasonable supporting data to identify whether the gun is real or toy?

"*Court*: Well, you'll just have to do the best you can with the evidence that was presented. But it must be proved that it was a real gun beyond a reasonable doubt, if you have a reasonable doubt as to whether it was a real gun or not, then that's the failure of proof, in other words, there cannot be an armed robbery with a toy gun. Does that satisfy the Jury on that subject? O.K. Redeliberate."

Defendant did not move for a mistrial at that time nor did he request a hearing to determine what had occurred an hour before. Outside of the remarks referred to above there is nothing in the record to shed further light upon the substance or mode of the judge's prior communication with the jury, that is, the precise words used in the communication, whether the communication was oral or written, or whether it was communicated via the bailiff or directly by the trial judge. Therefore, this Court can only examine the alleged misconduct as it appears in the record. It is apparent from the trial judge's remarks that, outside the presence of the Defendant and his counsel, the jury asked whether it was necessary the gun be real in order to constitute an armed robbery and the court answered affirmatively.

In his Brief the Defendant acknowledges that having neglected to raise the matter of the communication in his Motion to Correct Errors he failed to preserve the error for appeal but suggests that a reviewing court may consider questions raised for the first time on appeal if necessary to serve the ends of substantial justice or to prevent the denial of fundamental rights. *Winston v. State* (1975), Ind.App., 332 N.E.2d 229; *Bennett v. State* (1973), 159 Ind.App. 59, 304 N.E.2d 827.

Defendant contends that the trial court's communication with the jury, which concerned the substantial rights of the Defendant and which took place outside the pres-

ence of the Defendant, denied him the right to a fair and impartial trial and his rights to due process of law and hence constitutes fundamental error which requires a reversal of his conviction and a new trial.

▮▮▮▮ We do not question the constitutional basis of Defendant's right to be present in the courtroom "at every stage of the proceedings requiring the presence of the jury." *Harris v. State* (1967), 249 Ind. 681, 231 N.E.2d 800, 804; *Deming v. State* (1956), 235 Ind. 282, 133 N.E.2d 51; Constitution of Indiana, Article 1 § 13.[4]

In *Deming, supra,* where the trial judge conveyed to the jury via the bailiff, outside the presence of the defendant, information regarding the defendant's chance for parole, our Supreme Court stated:

"[O]ur courts in numerous decisions have established and followed the rule that all communications from the judge to the jury pertaining to the substantive rights of the defendant and not merely with the physical requirements of the jury, must be made in open court, in the presence, or within the knowledge of the accused and his counsel so that the accused may not be deprived of his right to except thereto, or to ask for additional instructions by reason of additional matters considered. *Hogg v. State* (1856), 7 Ind. 551; *Fish v. Smith* (1859), 12 Ind. 563; *Roberts v. State* (1887), 111 Ind. 340, 12 N.E. 500; *Quinn v. State* (1892), 130 Ind. 340, 30 N.E. 300; *Danes v. Pearson* (1892), 6 Ind.App. 465, 33 N.E. 976; *Coolman v. State* (1904), 163 Ind. 503, 72 N.E. 568; *Fina v. United States*, 10 Cir., (1931), 46 F.2d 643; *Miles v. State* (1944), 222 Ind. 312, 53 N.E.2d 779. *See also Dean v. State,* Ind., (1955), 130 N.E.2d 126. . . .

Furthermore, we have held that, when facts constituting misconduct and irregularities in the jury's deliberations are shown sufficient to raise a question of doubt as to the fairness and impartiality in the deliberations as to the verdict, prejudice may be conclusively presumed."

▮▮▮ However, the doctrine of conclusive presumption of prejudice when there is communication with the jury outside the presence of the defendant has been expressly overruled and such presumption can be rebutted and the error held to be harmless. *Harris v. State, supra.* Thus, in *Foster v. State* (1977), Ind., 367 N.E.2d 1088, the jury made written inquiry to the judge concerning their consideration of the evidence and the trial court replied in writing and in the absence of the defendant that:

"The Ct. cannot answer these questions. Your verdict must be based solely on the evidence presented in this trial."

Justice Prentice, speaking for our Supreme Court, held:

"The defendant complains that this communication with the jury was reversible error, since it occurred without his presence. He relies upon *Miles v. State* (1944), 222 Ind. 312, 53 N.E.2d 779; *Dean v. State* (1955), 234 Ind. 568, 130 N.E.2d 126 and *Deming v. State* (1956), 235 Ind. 282, 133 N.E.2d 51.

Both *Miles* and *Dean* recognized a defendant's constitutional right to be present at all stages of the criminal proceeding, under Article I, Section 13 of the Indiana Constitution and that reversible error would be presumed from his absence. *Deming,* focused more upon the nature of the communication to the jury and the effect it might have had upon fair deliberation, rather than upon a defendant's absolute right to be present when the communication took place. In

4. IC 35–1–28–1, now repealed, provided: "No person prosecuted for any offense punishable by death, or by confinement in the state prison or county jail, shall be tried unless personally present during the trial." This statute was repealed effective March 9, 1978. Acts 1978, P.L. 2 Section 3555. Also IC 34–1–21–4 (civil) and IC 35–1–37–4 (criminal) prohibit any communication with the deliberating jury, even by the sworn officer in charge, except to ask if they have reached a verdict or upon order of the court. However, upon request by the jury when there is disagreement between them as to part of the testimony, the judge may, in open court, and in the presence of the defendant and his attorney, allow the jurors to rehear testimony, *Harris v. State* (1978), Ind., 382 N.E.2d 913, the Court citing IC 34–1–21–6.

*Deming,* the court answered the jury's question concerning the defendant's chance for parole. In the case before us, the defendant does not assert that the substance of the court's communication to the jury was improper. Rather, he relies upon the error as being per se reversible.

In *Harris v. State* (1967), 249 Ind. 681, 231 N.E.2d 800, *Dean v. State, supra,* was expressly overruled insofar that it held communications to the jury in the defendant's absence to be per se reversible error. We there held that the inference of prejudice arising from the deprivation of a defendant's constitutional right to be present at all stages of his trial could be rebutted and the error held to be harmless. Defendant has alluded to the apparent difficulty the jury was having with the credibility question, as indicated by the interrogatory, as having some particular significance in the determination of this issue. However, he has not disclosed to us how the judge's response could have conceivably borne upon the issue. It is difficult to imagine a more innocuous response, and we have no hesitancy in saying that the communication was harmless, beyond a reasonable doubt."

Numerous cases support the proposition that communications with the jury outside the presence of the defendant which do not affect the substantive rights of the defendant or involve matters relevant to the jury's deliberation may be deemed harmless and do not constitute reversible error. *Gann v. State* (1975), 263 Ind. 297, 330 N.E.2d 88, (the bailiff, at the court's direction, merely told the jury to continue deliberation). *Frasier v. State* (1974), 262 Ind. 59, 312 N.E.2d 77, (the bailiff told the jury that sentencing was up to the judge when the jury had asked whether sentences would run consecutively or concurrently). *Lambert v. State* (1974), 159 Ind.App. 303, 306 N.E.2d 115, trans. denied, (the bailiff may have asked the jury if they could "wind it up and get it over as soon as possible"). *See also Conrad v. Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546, where the jury thought they had lost a verdict form and the bailiff, at the court's direction, told the jury to search again for the form as the judge was certain the necessary forms had been provided and, further, if they had any questions regarding the form of their verdict or any other matter they should return to open court.

On the other hand, our Courts have not hesitated to protect the sanctity of jury deliberations when such communications do affect the substantive rights of the accused. Thus, it has been held to be reversible error for the bailiff to discuss the effect of "good time" on a life sentence, *Turner v. State* (1970), 254 Ind. 91, 257 N.E.2d 825; for the bailiff to explain the verdict forms, *Laine v. State* (1972), 154 Ind.App. 81, 289 N.E.2d 141, for the bailiff to discuss and explain "disfranchisement", *Sparks v. State* (1972), 154 Ind.App. 681, 290 N.E.2d 793 and for the judge to further instruct the jurors during their deliberations in the absence of the defendant, *Dean v. State* (1955), 234 Ind. 568, 130 N.E.2d 126; *Miles v. State* (1944), 222 Ind. 312, 53 N.E.2d 779. *See also Deming, supra,* and *Jackson v. State* (1978), Ind.App., 372 N.E.2d 1242, where the contents of two notes from the judge to the jury were unknown and, therefore, prejudice was presumed.

After reviewing both the foregoing authorities and the actions of the judge in this case, we conclude that the court's comments outside the presence of the Defendant were prejudicial and would constitute reversible error if the issue were properly before us. The court, in effect, was attempting to define the nature of a deadly weapon, which information must be the subject of a formal written instruction. The information relayed to the jury by the court clearly pertained to the substantive rights of the Defendant and were certainly references to matters which were very relevant to the jury deliberation. In this regard, it matters not that the court had good intentions nor that the instructions were correct and favorable to the Defendant. These factors may tend to explain the nature and circumstances of the improper contact but do not correct it. The following

language of Judge Sharp in *Laine v. State, supra,* is particularly appropriate:

"The affidavit of the Bailiff here provides precisely the kind of record of what transpired in the jury room during deliberations that was not provided in the *Conrad v. Tomlinson* situation. Under *Conrad v. Tomlinson* it will be presumed that such irregularity causes harm if the irregularity is not explained. In this the only explanation boils down to the good intentions of the Bailiff. Such is not enough. Such an unexplained irregularity must result in the reversal of the conviction. We do not question the purity of the motives of the Bailiff or the members of the jury in this case. However, the event occurred at a highly sensitive point in time during the jury's deliberations. There is and there must be a certain quality of secular sacredness about the deliberations of the jury. When the Bailiff here read and explained the forms of verdicts to the jury he went beyond his proper function. The reading and explaining of such verdict forms which form and represent a crucial part of the jury's deliberations can only be explained to the jury in open court by the trial judge in the presence of all parties concerned, including in this case the Defendant-Appellant and his counsel." at p. 85 of 154 Ind.App., at p. 144 of 289 N.E.2d.

■ However, in reviewing this irregularity we have further questions to resolve. As noted earlier the Defendant was present in court and informed of the earlier communication by the judge. At that time, he had an opportunity to move for a mistrial on appropriate grounds *before* the jury completed its deliberations. In addition, the Defendant acknowledges that he did not include this error in his Motion to Correct Errors and raises the question for the first time on appeal. Failure to make such inclusion normally precludes raising the error on appeal. Ind.Rules of Procedure, Trial Rule 59(G). In addition, the failure to promptly object to an irregularity at the time it occurred constitutes a waiver of such irregularity. Our Supreme Court recently held in *Dodson v. State* (1978), Ind., 381 N.E.2d 90 as follows:

"Unless there is fundamental error, a Defendant cannot be allowed to gamble on the possibility of a favorable verdict by sitting idly by, making no objection to matters he considers prejudicial, and then attempt to assert those matters as error after an unfavorable disposition of his case. *Blow v. State* (1978), Ind., 372 N.E.2d 1166; *Stein v. State* (1975), Ind. App., 334 N.W.2d 698, 700."

■ Defendant now urges that the error alleged is fundamental and, therefore, an exception to the rules requiring a timely objection during trial as a prerequisite to consideration of the issue at the appellate level. Defendant apparently feels since the error in this case invaded his *constitutional rights* it must necessarily have risen to the stature of fundamental error. Such is not the law. In *Malo v. State* (1977), Ind., 361 N.E.2d 1201 at p. 1204 our Supreme Court stated:

"This claim of error was made for the first time by way of the defendant's brief, and for this reason alone, it is not reviewable. *Clark v. State* (1976) Ind., 352 N.E.2d 762, 766; *James v. State* (1974) 261 Ind. 495, 307 N.E.2d 59; *Brown v. State* (1975) Ind., 338 N.E.2d 498; *Pinkerton v. State* (1972) 258 Ind. 610, 283 N.E.2d 376. Defendant correctly asserts that fundamental error is an exception to the rules requiring proper in-trial objection as a prerequisite to raising the issue on appeal, citing *Kleinrichert v. State* (1973) 260 Ind. 537, 297 N.E.2d 822. That the error complained of relates to the violation of a right guaranteed by the constitution does not, in and of itself, render it fundamental error requiring us to go against well established rules of procedure. Rather, fundamental error is error which, if not rectified, would deny the appellant 'fundamental due process.' *Webb v. State* (1972) 259 Ind. 101, 284 N.E.2d 812."

The proposition that a violation of a constitutional right does not necessarily establish fundamental error is explained in detail

by Judge Sullivan of this Court in *Winston v. State* (1975), Ind.App., 332 N.E.2d 229 where he stated in part beginning at p. 232 of 332 N.E.2d:

"The fact that the alleged inadmissability of a particular piece of evidence rests on constitutional rather than common law or statutory grounds has not deterred the Indiana courts from applying the specific and timely objection requirement with equal force in such cases. *See Harrison v. State* [(1972), 258 Ind. 359, 281 N.E.2d 98]; *Smith v. State* (1971), 256 Ind. 603, 271 N.E.2d 133; *Sargeant v. State* (1970), 255 Ind. 252, 263 N.E.2d 525; *Tyler v. State* (1968), 250 Ind. 419, 236 N.E.2d 815; *Mosby v. State* (1975), Ind.App., 329 N.E.2d 600; *Hardin v. State* (1972), Ind. App., 287 N.E.2d 359; *Johnson v. State* (1972), Ind.App., 281 N.E.2d 922." * . *

"The Supreme Court's definition of fundamental error in *Grier v. State, supra,* as being an error which is so prejudicial to the defendant that he '*could not have had a fair trial*', *Id.* 251 Ind. 214 at 217, 240 N.E.2d 494 at 496 (emphasis supplied), suggests to us an error that pervades the climate of the proceedings below, *viewed* as a *whole,* depriving the defendant of any realistic opportunity for a fair hearing. The cases in which 'fundamental error' has been recognized in the trial judge's unfair conduct towards the defendant, *see, e. g., Ford v. State, supra,* [(1967), 248 Ind. 438, 229 N.E.2d 634], *Wilson v. State, supra,* [(1943), 222 Ind. 63, 51 N.E.2d 848], substantiate our inference as to the character of error which will be considered 'fundamental'. The United States Court of Appeals for the Second Circuit, in refusing to review the admission of supposedly constitutionally inadmissible evidence because of a failure to timely object to its introduction below, stated that its power to review improperly raised errors would be restricted to errors which 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' *United States v. Indiviglio* (2d Cir. 1965), 352

F.2d 276, 280. We think that the *Indiviglio* court's statement corroborates our interpretation of the character of 'fundamental error' gleaned from the Indiana cases: that such errors are those that so inundate the trial as to remove from the proceedings its essential cloak of fairness. Admission of testimony here questioned is not such an error."

Finally, in *Phillips v. State* (1978), Ind., 376 N.E.2d 1143, our Supreme Court answered a question similar to the one now faced by this Court as follows:

"The defendant assigned as error certain alleged indiscreet comments made by the court's bailiff to one of the jurors. The comments made by the bailiff related to his assessment of defense counsel's professional capabilities, which was favorable, and speculation as to the content of his argument. The exchange of such comments between the an officer of the court and a member of a jury during the course of a trial is highly improper, but in this instance it does not appear to have been prejudicial to Defendant's right to a fair and impartial trial.

Further, Defendant failed to make a timely objection or a motion for mistrial. He argues upon appeal that the conduct complained of was fundamental error and that, therefore, the correct in-trial procedure was not a prerequisite to presentation of the issue upon appeal. But, as stated in *Webb v. State* (1972), 259 Ind. 101, 284 N.E.2d 812, a reviewing court should be reluctant to invoke the rule of fundamental error, and will do so only when a blatant error has occurred which would, otherwise, deny a defendant fundamental due process."

 Here, comments by the court to the jury outside the presence of the Defendant were favorable to the Defendant's case. The court apparently told the jury that a toy gun was not a deadly weapon under the Armed Robbery Statute. Later, and in the presence of the Defendant and counsel, the court expanded somewhat on this same

principle.[5] Since the Defendant was convicted of the lesser offense of Robbery, the jury's verdict reflected the favorable nature of these comments. Under the circumstances of this case it is clear to us that the error complained of was not so blatant that the Defendant was deprived "of any realistic opportunity for a fair hearing." Therefore, he was not denied fundamental due process and did receive a fair trial.

Judgment affirmed.

CHIPMAN, P. J., concurs with opinion.

YOUNG, J., concurs.

CHIPMAN, Presiding Judge, concurring.

Although I concur with the majority in the ultimate conclusion, I am gravely concerned over the trial court's instruction concerning probation, short sentences, parole, good time and credit for time spent in jail prior to sentencing. Even though the concluding paragraph of this instruction advises the jury not to speculate as to the time a defendant may ultimately serve, it actually injects into a criminal trial an element that is so complicated that attorneys and even the Parole Board have difficulty interpreting the legislation pertaining to these subjects.

As pointed out in the majority opinion, the Supreme Court addressed this issue in the cases of *Feggins v. State*, (1977) 265 Ind. 674, 359 N.E.2d 517 and *Cooper v. State*, (1977) 265 Ind. 700, 359 N.E.2d 532. In the *Feggins* trial a prospective juror inquired as to whether a life sentence would mean imprisonment for the remainder of the defendant's life. The trial court attempted to respond by stating that some defendants die in prison and others are paroled. Justice DeBruler, writing for the majority, stated that it was error for the court to instruct and for the prosecutor to argue that a convicted defendant will serve a lesser sentence than that which the jury might impose. The Supreme Court did hold, however, that *if there is inquiry* by a juror concerning the actual time a defendant might serve or if the subject is inadvertently introduced to the jury, then the court may give a limited instruction on that subject.[1]

The record in the case at bar does not disclose that an inquiry was made by a juror on the subject of a lesser sentence or that through inadvertence the matter was injected into the trial. In light of the *Feggins* decision, the court's "good time" instruction would be in error. We are, however, compelled by the *Cooper* decision to hold that Decker has waived this issue by failing to include it in his motion to correct errors and, further, that the court's giving the identical "good time" instruction does not rise to "substantial error" which would thus permit appellant to address it for the first time on appeal.

I think it should be clear that a trial court's attempt to discuss with a jury the possibility of a lesser sentence, unless the circumstances are similar to the *Feggins* case, is inviting reversible error when the defendant preserves that error.

---

5. Under no circumstances should this opinion be construed as approving the trial judge's oral instruction that a "toy gun" is not a "dangerous or deadly weapon" under IC 35–12–1–1 (now repealed), or "deadly weapon" under IC 35–42–5–1 (effective October 1, 1977). If a "toy gun" could be used as a bludgeoning instrument it would fall within the meaning of a dangerous or deadly weapon as defined in *Jones v. State* (1978), Ind., 381 N.E.2d 1064.

1. The best approach to the prevention of such inappropriate jury speculation, an approach which is fair to the accused and the State, is to instruct the jury upon their inquiry or upon the inadvertent introduction of the subject before the jury, that, first, the State is authorized by law to confine the accused for the full length of any sentence received by him, but that second, various devices exist which could reduce the length of any sentence received by the defendant, including parole, pardon, and "good time," and that the length of the sentence which the accused will actually serve is contingent upon numerous future events and cannot be determined with any reasonable certainty at the time of trial. For this reason the jurors should exclude consideration of such devices from their deliberations so as not to fall into fruitless speculation. *Feggins v. State*, (1977) 265 Ind. 674, 685, 359 N.E.2d 517, 524.